# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )( | |
| )( | **Criminal No. 21-71 (ABJ)** |
| v. )( | **Judge Amy B. Jackson** |
| )( | **Status Conference: May 12 2021** |
| **KARL DRESCH** )( | |

## MOTION TO LIFT PREVENTIVE DETENTION
## AND POINTS AND AUTHORITY IN SUPPORT THEREOF

COMES NOW the defendant, Karl Dresch, by and through undersigned counsel, and respectfully moves this Honorable Court to lift his preventive detention in this case. In support of this motion, Mr. Dresch would show:

1.      On January 19, 2021, Karl Dresch was arrested near his home in a small town in Michigan on a warrant that had originated from this District. The charges at issue in the warrant pertain to the events that occurred at the United States Capitol on January 6, 2021. On January 20, 2021, Mr. Dresch appeared before a Magistrate Judge in the United States District Court for the Western District of Michigan for an initial appearance. Mr. Dresch was presented on three charges: 1) Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)), 2) Disorderly Conduct on Capitol Grounds (40 U.S.C. § 5104(e)(2)(D)), and 3) Obstructing an Official Proceeding (18 U.S.C. 1512(c)). None of these charges are of the type that creates a presumption that Mr. Dresch should be held without bond. 18 U.S.C § 3142(e)(2),(3). Indeed, none of these charges are of the type that, by its nature, even qualifies Mr. Dresch for consideration for preventive detention. 18 U.S.C. §3142(f)(1). Nevertheless, the government moved for his preventive detention by claiming that, as a general matter, he posed a serious risk of flight and a serious risk of obstruction of justice per 18 U.S.C. § 3142(f)(2)(A),(B). Motion for Detention. For Mr. Dresch's initial appearance, the Pretrial Services Agency for the

Western District prepared a report (PSA Report).  The report recommended that Mr. Dresch should be released on conditions with a $20,000 unsecured bond.  PSA Report at 6. Even still, the Magistrate Judge in the Western District ordered that Mr. Dresch be held without bond pending trial, finding by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any person and the community and also finding by preponderant evidence that no condition or combination of conditions would reasonably assure his appearance at future proceedings.  Order of Detention Pending Trial (Detention Order) at 2.  Mr. Dresch's case was transferred to this District.

2.      On February 3, 2021, a five-count indictment was filed against Mr. Dresch in this District.  At some point after this, Mr. Dresch was brought to this District by the United States Marshals Service.  Mr. Dresch was arraigned on that indictment on March 29, 2021.  A status conference has been set for May 12, 2021.

3.      The five counts that Mr. Dresch is charged with in his indictment are: 1) Obstruction of an Official Proceeding (18 U.S.C. §§ 1512(c)(2), 2);  2), Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)); 3) Disorderly or Disruptive Conduct in a Restricted Building or Grounds 18 U.S.C. § 1752(a)(2)); 4) Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(D)); and 5) Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)).  Only count 1 is a felony.  As before, none of these charges are of the type that creates a presumption that Mr. Dresch should be held without bond (18 U.S.C. § 3142(e)(2),(3)) or that, by its nature, even qualifies Mr. Dresch for consideration for preventive detention (18 U.S.C. § 3142(f)(1)).

4.      The government has begun providing undersigned counsel with discovery for this case.  While counsel expects additional discovery to come, counsel is not currently aware of any evidence that would indicate that Mr. Dresch assaulted anyone or destroyed any property at the Capitol on January 6.  Moreover, he is not aware of any evidence that

2

would indicate that Mr. Dresch made any kind of forcible entry into the Capitol on January

6.  Based on a review of the discovery provided so far, it appears that the government's

evidence in this case is simply that Mr. Dresch entered the Capitol on January 6, 2021 as

part of the large crowd who occupied the building to protest the counting of the Electoral

College votes.

      5.      Mr. Dresch is 40 years old.  He is from a small town on the already remote

Upper Peninsula of Michigan.  His family is from the Upper Peninsula.  Mr. Dresch's

father was an academic who turned local politician.  Even now after his death, his father

remains well known on the Upper Peninsula.  Though Mr. Dresch was born in Connecticut

and spent a few years abroad as a child due to his father's employment, he was largely

raised on the Upper Peninsula, and except for a period in his early 20's when he went to

live with a brother in Georgia, he has spent all his adult life on the Upper Peninsula.  Mr.

Dresch is married and has a 13-year-old son with whom he shares joint custody with his

former wife.  Mr. Dresch, his wife, and his son live in a house that had already been in Mr.

Dresch's family for a while before he took over occupancy of it a few years ago.  The

house is owned by his mother.  Mr. Dresch's mother is 78 years old and continues to live

nearby.  She relies on Mr. Dresch to help her.  Mr. Dresch is self-employed as a laborer.

Most of his work involves installing hardwood floors.  The past year has been difficult for

Mr. Dresch financially because of the pandemic.  To make a little extra income, Mr.

Dresch sells pro-Trump paraphernalia (flags, banners, baseball hats, wool hats, etc.) from

the front porch of his home.

      6.      Since undersigned counsel has been appointed to represent Mr. Dresch, he

has been receiving a steady stream of letters of support for Mr. Dresch from various

friends, neighbors, and family.  The letters are contained in an attachment that is being

filed with this motion for bond.  Attachment, Letters of Support.  It is clear from letters

that Mr. Dresch lives in a community where he is well known, valued, and trusted.  The

letters are consistent in stressing Mr. Dresch's humble and gentle nature and the essential

goodwill he has for his family, friends, and neighbors.  The letters unqualifyingly present Mr. Dresch as a non-violent person. The letters are from people of all walks of life in Mr. Dresch's community and include letters from the local sheriff, a local mayor, and the pastor of Mr. Dresch's church.  It is submitted that a review of the letters is the best way to get a sense of who Mr. Dresch is.

7.      Mr. Dresch has prior criminal convictions for what appear to be traffic-and-alcohol-type offenses in five cases: 1) Disturbing the Peace from 2008 (fine only), 2) Owner Permitting Another to Violate Motor Vehicle Code and Unlawful Use of License Plate, Registration, Title from 2010 (fines only), 3) Obstructing Officer from 2011 (fine only), 4) Fleeing Police Officer and Operating Vehicle while Impaired from 2013 (one year jail), and 5) Fleeing Officer from 2013 (11 months jail followed by two years probation).  PSA Report at 4-5.  These appear to be Mr. Dresch's only prior convictions. Id.  It should be noted that the convictions from cases 4 and 5 above both concern a single incident in which Mr. Dresch apparently fled police in Wisconsin across the state line into Michigan, thus separately violating similar laws of each jurisdiction.  Id.  The convictions in these two cases are by far the worst of Mr. Dresch's prior convictions.  Indeed, they appear to be the only prior convictions he has where he got anything more than a fine.  The convictions are eight years old, and it should be noted that Mr. Dresch successfully completed the two-years probation he was given in connection with them.  Id. at 5.

8.      When Mr. Dresch was arrested on January 19, 2021, the police executed a search warrant at his residence.  According to information presented at his initial appearance in the Western District of Michigan, during the search of the residence, the police found four firearms and various quantities of ammunition.  The four firearms consisted of two shotguns, a Glock .40 pistol, and wood-bodied rifle.  Pictures of the firearms have been turned over to undersigned counsel through discovery.  From the pictures, it is clear than none of the long guns are what could be described as modern firearms.  Indeed, at least one of the shotguns and, especially, the rifle appear to be fairly

old.  The handgun is similarly unremarkable.  According to information presented at Mr.
Dresch's initial appearance, during the search of Mr. Dresch's residence, the police also
recovered a small knapsack with Atlanta Braves logos on it that contained several rounds
of ammunition that could be used in the rifle that was found at the residence.  A picture
taken at the Capitol on January 6 shows a person who the government claims is Mr. Dresch
holding a knapsack that resembles the one with the ammunition inside that was allegedly
found at Mr. Dresch's residence on January 19.  At this point, it must be stressed that
photographs and videos from the Capitol on January 6 that the government claims capture
Mr. Dresch show that he did not have a rifle with him.

9.      In addition to selling pro-Trump paraphernalia from the front porch of his
home, Mr. Dresch also sells, for some reason, knapsacks with Atlanta Braves logos on
them.  Indeed, photographs from the search of Mr. Dresch's house that have been turned
over to undersigned counsel in discovery show that there was actually a small cache of
such knapsacks at Mr. Dresch's house the day the search was conducted (January 19).

10.     At his initial hearing in the Western District of Michigan, it was brought out
that Mr. Dresch's conviction from Michigan for Fleeing a Police Officer is a felony
conviction.  Accordingly, under federal law, it would be illegal for Mr. Dresch to possess
firearms.  At this point, it should be noted that the government has not presented any
evidence to show that Mr. Dresch possessed the firearms that were allegedly found at his
house.  Further, he has not been charged with any crimes in connection with those
firearms.  Beyond this, it is important to note that the guns that were allegedly recovered
from the house would not qualify in anyone's understanding as anything other than the
type of ordinary firearms that are commonplace in rural households throughout America.
They are not assault weapons—but guns that really are for hunting and home protection.

11.     In his detention order, the Magistrate Judge who ordered that Mr. Dresch be
held without bond noted that one of the factors he felt warranted such action was Mr.
Dresch's "[h]istory of violence or use of weapons."   Detention order at 2.  This conclusion

seems unfounded.  While it could perhaps be argued that there is a suspicion that Mr.

Dresch possessed firearms after getting a felony conviction, Mr. Dresch has no history of

violence or of using weapons in connection with criminal activity.  See PSA Report at 4-5.

12.     Where a magistrate judge has ordered a person to be held without bond

pending trial, "the person may file, with the court having original jurisdiction over the

offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  In

order to hold a person without bond pending trial, a judicial officer must find that "no

condition or combination of conditions will reasonably assure the appearance of the person

as required and the safety of any other person and the community."  18 U.S.C. §

3142(e)(1).  Here, conditions of release can be fashioned for Mr. Dresch that will

reasonably assure his appearance at future court proceedings and the safety of other

persons and the community.  Accordingly, Mr. Dresch should be released on conditions.


**DISCUSSION**

As an initial matter, it must be noted that it is questionable whether of not Mr.

Dresch even qualifies for consideration for preventive detention on either the grounds that

he poses a "serious risk of flight" or the grounds that he poses a "serious risk to obstruct

justice."  Though the Magistrate Judge who detained Mr. Dresch likely thought that Mr.

Dresch's prior convictions for fleeing and eluding police officers in 2013 provided a basis

for finding he posed a serious risk of flight, it does not really follow that, just because Mr.

Dresch may have fled from the police during a traffic stop eight years ago, he will now fail

to appear for court in this matter.  This is especially true since, despite apparently having

five prior cases, there is nothing to indicate that Mr. Dresch has ever failed to come to

court in the past.  Moreover, Mr. Dresch has extremely strong ties to his community.  That

Mr. Dresch might pose a serious risk of obstructing justice is even harder to see. There is

nothing in his past to suggest he might do this, and nothing he has done or said in

connection with this case indicates differently.  Beyond all this, even if it can be found that

Mr. Dresch does qualify for consideration for preventive detention on the grounds that he poses a "serious risk of flight" or a "serious risk to obstruct justice," the Court still cannot find that such detention is actually required. When deciding whether or not to detain a person pending trial, a judicial officer is to look at 1) the "nature and circumstances of the offense[s] charged," 2) "the weight of the evidence against the person," 3) "the history and characteristics of the person," and 4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Consideration of these factors compels a finding that Mr. Dresch should be released on conditions.

### Nature and Circumstance of the Offenses and Weight of the Evidence

The government's case against Mr. Dresch appears to be based on evidence that he was present inside the Capitol on January 6 with the crowd that was protesting the counting of the Electoral College votes. Admittedly, the government does appear to have video and pictures that show that Mr. Dresch was inside the Capitol with the protesting crowd on January 6. However, while this evidence might go some way towards helping it get convictions against Mr. Dresch for the four misdemeanor counts it has charged him with, it is less clear how the government can prove that Mr. Dresch intended his conduct to be anything more than an act of protest—as opposed to an attempt to actually obstruct Congress from performing its duties. Thus, the evidence against Mr. Dresch in connection with the only felony he is charged with—the Obstruction count—seems weaker. Beyond this, no matter what the strength of the evidence against Mr. Dresch may be, it must be acknowledged that none of the counts in the indictment against him are for offenses that are considered dangerous enough to create a presumption that he should be held without bond. Moreover, in regards to the events at the Capitol on January 6, there is no evidence

that Mr. Dresch engaged in any assaults or destructive conduct or even that he obtained

entry by force.  On this point, it should be noted that, in <u>United States v. Munchel</u>, No. 21-

3010, slip op. (D.C. Cir. March 26, 2021), the United States Court of Appeals for the

District of Columbia Circuit recently considered a situation where the District Court had

made a dangerousness finding against two defendants charged in connection with the

events at the Capitol on January 6 based on the nature and circumstances of the charged

offenses, the weight of the evidence, and danger-to-the-community factors.  <u>Id.</u>, slip op. at

9, 15-16.  The Court of Appeals concluded that the District Court had clearly erred in

doing this because it had failed to consider the fact that there was no evidence the

defendants had vandalized any property or physically harmed any person.  <u>Id.</u>, slip op. at

18.  The Court of Appeals went on to add:

> In our view, those who actually assaulted police officers and broke through
> windows, doors, and barricades, and those who aided, conspired with, planned or
> coordinated such actions, are in a different category of dangerousness than those
> who cheered on the violence or entered the Capitol after others had cleared the
> way.

<u>Id.</u>, slip op. 18-19.  Mr. Dresch appears to be precisely the kind of January 6 defendant

who falls into the lower category of dangerousness.

In evaluating the nature and circumstances of the offenses Mr. Dresch is charged

with, the Court should also consider that the events at the Capitol on January 6 were

occasioned by an already uncommon event (the quadrennial counting of the Electoral

College votes in the United States Congress) occurring in the extremely unusual context of

people being widely told by relied-on news sources and high-ranking officials entrusted

with public authority, including the then-sitting President of the United States, that the

votes were illegitimate and the counting process corrupt.  The odds a similar confluence of

events and crowd dynamics occurring again seem currently unlikely.  In <u>Munchel</u>, the

Court of Appeals noted that, for those defendants charged in connection with the events at

the Capitol on January 6 who did not assault anyone or damage any property, "the

presence of the group was critical to their ability to obstruct the vote and to cause danger to

the community."  <u>Id.</u>, slip op. at 19.  The Court indicated that, in order to find that such

defendants should be held without bond because they are likely to do something similar in

the future, judicial officers must explain how those defendants would be able to do so

"now that the specific events of January 6 have passed."  <u>Id.</u>, slip op. at 19-20.

     For all the above reasons, consideration of the nature and circumstances of the

charged offenses and the weight of the evidence militate in favor of Mr. Dresch's release.

## <u>The History and Characteristics of Mr. Dresch</u>

     Mr. Dresch is 40 years old.  He is from a small town on Michigan's remote Upper

Peninsula, which is where his family is from where he has lived the majority of his life.

His family and community ties to where he lives could not be stronger.  As the letters of

support that have been written for him show, Mr. Dresch is well-known in his community

and universally regarded as a humble and gentle family man who goes out of his way to

help his neighbors.  He is regarded as a fundamentally non-violent person.  While Mr.

Dresch does have prior convictions, they appear to be for traffic-and-alcohol related

offenses.  He has no history of violence or even property crimes.  For all except two prior

convictions, he appears to have received only fines.  The other two convictions are both

related to a single event—a police chase that, because it occurred across state lines, ended

up resulting in similar convictions in each jurisdiction.  These convictions are eight years

old and represent Mr. Dresch's most-recent convictions.  As a result of these convictions

Mr. Dresch was placed on two-years probation, which he successfully completed. There are no indications that Mr. Dresch has ever failed to appear in court for any of his previous cases. Mr. Dresch has a wife and a thirteen-year-old son who depend on him. His mother, who lives nearby, also relies on him. He has a supportive family and community behind him.

Likely, what will concern the Court about Mr. Dresch is the fact that four firearms were allegedly found in his house when it was searched after his arrest. As to the guns themselves, there is nothing concerning about them. They are just two shotguns, an old rifle, and a handgun. The problem of course is that one of Mr. Dresch's prior convictions related to the police-chase incident from 2013 is considered a felony. Accordingly, it would be illegal for Mr. Dresch to possess guns. It is this fact that will likely trouble the Court. This is understandable, but it is still not enough to warrant a finding by clear and convincing evidence that Mr. Dresch poses a danger to others or the community—especially when viewed in conjunction with the letters of support for Mr. Dresch from the very people he lives among, which clearly show they feel entirely safe around him. The guns allegedly recovered from Mr. Dresch's house are not assault weapons. They are exactly the type of guns that can be widely found in homes across rural America—guns that really are for hunting and home protection. A person living where Mr. Dresch does would regard them as commonplace. Moreover, there is no evidence that Mr. Dresch is the one who actually possessed the guns, and he has not been charged with any crimes in relation to them. Also, the guns have now been seized by the F.B.I. and removed from Mr. Dresch's house. Thus, notwithstanding the fact that four firearms were allegedly found in

Mr. Dresch's house, consideration of his history and characteristics still militates in favor of his release.

### The Danger Posed by Mr. Dresch's Release

If the Court sees fit to release Mr. Dresch, he will go back to live with his wife and son in their home in Michigan's remote Upper Peninsula.  Mr. Dresch will consent to GPS location monitoring and travel restrictions.  If these conditions are imposed it is difficult to see how Mr. Dresch would pose a danger to the community.  As to posing a danger to society writ large, it bears repeating that that the events at the Capitol were unique and do not appear likely to recur.  Thus, for this reason alone, it unlikely Mr. Dresch would do something similar again.  As to posing a danger to the community he lives in, it bears calling attention again to the letters of support that have been written for Mr. Dresch.  The people who know Mr. Dresch, the people he lives among, know him to be gentle and peaceful and do not fear him.  This means something.

### Conclusion

Consideration of the above factors shows that conditions of release can be fashioned that will assure Mr. Dresch's appearance at future court proceedings and the safety of the community if he is released.  Accordingly, it cannot be found that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  For these reasons, Mr. Dresch's preventive detention is not warranted.

WHEREFORE, the defendant, Karl Dresch, moves this Honorable Court to vacate the order of preventive detention in this case and release him on the conditions specified above.

Respectfully submitted,

_____/s/_____
Jerry Ray Smith, Jr.
D.C. Bar No. 448699
Counsel for Karl Dresch
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 347-6101