# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **KARL DRESCH,** <br><br> **Defendant.** | **CR NO. 21-CR-0071 (ABJ)** |

## GOVERNMENT RESPONSE TO DEFENDANT'S MOTION FOR BOND

Defendant Karl Dresch, a convicted felon who possessed multiple firearms and ammunition at his residence, participated in the obstruction of a Congressional proceeding at the United States Capitol on January 6, 2021. He was arrested on January 20, 2021, for crimes associated with his participation in the riot at the U.S. Capitol. Dresch was ordered detained after a hearing before a U.S. Magistrate Judge in the Western District of Michigan, based on danger to the community and risk of flight. During his transport to the District of Columbia for appearance on the complaint, he was indicted by a federal grand jury for crimes associated with his actions on January 6, 2021, including obstruction of an official proceeding in violation of Title 18, United States Code, Section 1512(c)(2). Defendant's motion for bond should be denied; his prior encounters with law enforcement and disrespect for the rule of law demonstrate that no set of conditions would be sufficient to secure his appearance at a trial of this matter or ensure the safety of others.

## BACKGROUND

*Defendant's Participation in January 6, 2021 Riot at the U.S. Capitol*

The facts regarding the events of January 6, 2021 are well-known to this Court and are summarized in the affidavit attached as Exhibit 1; thus, the government only addresses the facts regarding defendant's specific actions herein. As set forth in Exhibit 1, on January 7, 2021, the Federal Bureau of Investigation received a tip that defendant was at the U.S. Capitol Building on January 6, 2021, and had entered without permission or authorization. *Exhibit 1, Statement of Facts Supporting Criminal Complaint, ¶ 11*. FBI investigation of publicly-available information from Facebook revealed postings from an account with a user name of Karl Dresch regarding activities at the U.S. Capitol. *Id. ¶ 13-15*. Information obtained from a search warrant of the Facebook account showed that, by no later than December 16, 2020, defendant posted information to his Facebook account which was focused on the January 6, 2021, certification, and which equated the planned events for January 6, 2021, with the historical events on July 4, 1776. *Id. ¶ 13*. For example, on December 16, 2020, defendant posted, "Stop the Steal," and on December 20, 2020, defendant posted, "7-4-1776 = 1-6-2021." *Id*.

By January 3, 2021, defendant posted that he was preparing to go to "DC," and was "prepared for chemical attacks and what not." *Id*. He also urged others to do so by way of his Facebook account, writing, "NO EXCUSES! NO RETREAT! NO SURRENDER! TAKE THE STREETS! TAKE BACK OUR COUNTRY! 1/6/2021=7/4/1776." *Id*. Between January 3, 2021, and January 6, 2021, other posts on defendant's Facebook account reflect preparations to arrange travel and then travel to Washington, D.C., for that purpose. Facebook records show that, at about 3:13 p.m. on January 6, 2021, defendant posted a photograph taken outside the U.S. Capitol with the comment "Who's house? OUR HOUSE!" *Id. ¶ 16*.

Facebook records further show that, at about 3:14 p.m. on January 6, 2021, defendant posted a photograph with the title, "We are in." *Id. ¶ 17*. The FBI shared the post with a U.S. Capitol Police Officer, who confirmed that it accurately depicts the inside of the U.S. Capitol Building, specifically, the "Crypt," a location under the rotunda in the center of the Capitol.

Defendant also posted, or sent messages containing, videos of the scene inside and around the U.S. Capitol during the conduct under investigation. For example, defendant posted the video depicted (in still frame), in Figure 1. The FBI provided Figure 1 to a member of the U.S. Capitol Police, who works in and is familiar with the U.S. Capitol Building, and who verified that the photograph in Figure 1 is an accurate depiction of the U.S. Capitol Visitor's Center, which is inside the U.S. Capitol and which was closed to the public on January 6, 2021. *Id. ¶ 19*.

*Figure 1*



At 12:11 a.m. on January 7, 2021, shortly after midnight, defendant posted the video with

4

the comment, "Okay all you conspiracy theorists [winking smiley face emoji] don't worry I loves yous all just setting the record straight.antifa did not take the capitol.that was Patriots, I can't guarantee there weren't some shit birds in the crowd but what multi-million crowd can you guarantee?.don't give them the thunder, **we the people took back our house**, the news is all bullshit.and now **those traitors Know who's really in charge**. And I can't say I saw any violence from our people, despite all the poking of the capitol police, gassing randomly into the women and children being peaceful, beating old men we kept chill[.]" *Id. ¶ 20*.

While inside the Capitol, defendant also exchanged messages with other Facebook users. For example, on January 6, 2021, another Facebook user posted, "Patriots are in the Capitol building now." Defendant responded at 2:44 p.m., writing "I am." The other Facebook user wrote, at 2:48 p.m., that "Word is police are getting ready to use tear gas." Defendant responded, "Been using it. Mask up." *Id. ¶¶ 21-23*.

Later on January 6, 2021, the defendant also corresponded with a second Facebook user, and sent that user a self-portrait photograph depicting the defendant in front of the U.S. Capitol with the message: "Just had a beer on our front porch." *Id. ¶ 24*. At approximately 5:18 p.m., defendant further commented, "That's right outside the house of representative...we got in! Took a lil gas ...wtf I love masks now!" *Id. ¶ 25*. Defendant also stated: "Had the cops booking it." *Id. ¶ 26*. The defendant also responded to other people's comments on Facebook. For example, at about 4:46 p.m., in response to another post, the defendant wrote, "It was peaceful…still got a lil gas tho…mask on for safety[.]" *Id. ¶ 27*. In response to another person who wrote about the individuals breaking into the Senate and House chambers and breaking glass and shoving officers, at around 6:09 p.m., the defendant wrote, "we broke no glass no shoving I seen[.]" *Id*.

Later that evening, the defendant expressed his approval of the events of the day. At

5

about 8:32 p.m., commenting on a picture of a crowd at the Washington Monument, the defendant posted, "Total Victory!" *Id.* ¶ *28*. At 8:44 p.m., the defendant posted, "I'm excited!" *Id*. The next day, on January 7, 2021, at about 9:36 a.m., defendant commented on an unidentified post that "Mike Pence gave our country to the communist hordes, traitor scum like the rest of them, we have your back give the word and we will be back even stronger." *Id*.

### *Arrest and Detention Hearing*

Agents arrested defendant on January 19, 2021, on an arrest warrant issued from the United States District Court for the District of Columbia in connection with a Criminal Complaint charging the defendant with Obstruction of Justice, 18 U.S.C. § 1512(c)(2), Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, 18 U.S.C. §§ 1752(a), and Violent Entry and Disorderly Conduct on Capitol Grounds, 40 U.S.C. § 5104(e)(2).

Agents searched defendant's residence on January 19, 2021, in Calumet, Michigan, pursuant to a federal search warrant. Among other items, agents located several hundred rounds of rifle (7.62) ammunition, a Russian rifle, shotgun shells, a shotgun, and an Atlanta Braves backpack. *See Exhibit 2, Search Warrant Inventory*. The ammunition was located in multiple places throughout the house, including the dining room, the master bedroom, an upstairs hall room, and inside the backpack. *Exh. 2.* Specifically, the backpack contained a Pilot gas station receipt from Hagerstown, Maryland dated January 5, 2021, a Metro SmartTrip card, and 8 boxes of 7.62 ammunition, containing a total of 160 rounds. *See Exhibit 3, FBI 302 dated 1/29/21 of Contents of Backpack, and Figures 2a-2c*. The boxes matched the boxes of ammunition found in the house. *See Figure 2a and 3c*. The firearms were identified in the Michigan State Police Report as a Mossberg 12-gauge shotgun and a Russian-made SKS 7.62 mm x 39 caliber rifle.

*See Exhibit 3b, Michigan State Police Report dated January 19, 2021.*

*Figure 2a-2b-2c: Contents of the Atlanta Braves Backpack*







*Figure 3a-3b-3c: Shotgun, Rifle, and Ammunition in Residence*







The following day, agents with the Bureau of Alcohol, Tobacco, and Firearms (ATF) obtained and executed a federal search warrant at the residence and located additional firearms, including a Glock pistol, pictured below, and a Remington rifle. *See Exhibit 4, ATF Memorandum of Investigation dated January 25, 2021; Figures 4a-4c.* Multiple boxes of ammunition were also retrieved. *See Exh. 4, p. 2*.

*Figures 4a-4b-4c: Glock, Ammunition, Rifle*







Based on these facts, the government sought detention of defendant pending removal to the District of Columbia. After a hearing on the matter on January 22, 2021, the U.S. Magistrate Judge ordered defendant detained based on its finding that there was clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community, and that there was a preponderance of evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required. *See Exhibit 5, Order of Detention Pending Trial*. The detention order noted that the court's findings were based, in part, on the fact that the weight of the evidence against the defendant is strong, the defendant's prior criminal history, the

10

defendant's history of violence or use of weapons, and the defendant's prior attempt(s) to evade law enforcement. *Id.*

On February 3, 2021, defendant was indicted by a federal grand jury for obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2) and § 2, and four misdemeanors, including knowingly entering or remaining in any restricted building or grounds without lawful authority, and violent entry and disorderly conduct on Capitol grounds. Defendant was arraigned on March 12, 2021. The defendant filed a motion for bond with this Court on April 1, 2021.

## ARGUMENT

The government may seek pretrial detention if the case involves a serious risk of flight, obstruction of justice, or witness intimidation. 18 U.S.C. § 3142(f)(2). The Court may hold a hearing to determine whether there are any conditions or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of any person in the community. *Id.* at § 3142(f)(1). As a preliminary matter, the rules concerning the admissibility of evidence do not apply to the presentation of information at the detention hearing, and hearsay evidence is permitted. 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (holding that the Bail Reform Act allows the government to proceed by proffer). The government must prove by clear and convincing evidence that a defendant is a danger to the community for detention to be ordered. 18 U.S.C. § 3142(f)(2)(B); *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). A finding that the defendant poses a risk of flight must be supported by a preponderance of the evidence. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

There are four factors under Section 3142(g) that the Court shall consider in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense

charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Based on these factors, there no conditions or combination of conditions that would assure the safety of the community or the appearance of the defendant at trial. *See* 18 U.S.C. § 3142(e)(1).

Defendant has shown a flagrant disregard for the law in his past interactions with law enforcement, and in his conduct and communications in relation to the instant offense. He poses a danger to the community and should be detained pending a trial of this matter. In addition, given his disregard for the law, there are no set of conditions that would guarantee his presence at a trial of this matter.

### (1) Nature and Circumstances of the Offense

The grand jury charged defendant with serious offenses. He mocked on social media the fact that the rioters were being met with gas, and that the police force was overwhelmed. *See Exh. 1 at ¶¶ 25-26*. These were not the actions of a "peaceful protestor," or of someone who became caught up in day's events: he knew why he was there -- to interfere with the democratic process -- and what he sought to achieve -- the disruption of the counting of electoral votes. This intent is manifested in his own words before and after January 6. *See Exh. 1, ¶¶13-29*. This factor weighs in favor of detention.

### (2) Weight of the Evidence

The evidence that defendant committed the incursion into the Capitol for purposes of obstructing the vote is strong. Defendant's contemporaneous photos and social media postings bear witness to his presence and intent on illegally entering the U.S. Capitol on January 6. His intent in participating in the riot to obstruct lawful democratic processes is also demonstrated by

12

his social media postings before and after the riot. Specifically, on November 23, 2020, defendant posted: "Its war everywhere if we let this election get stolen." *See Exhibit 6, Dresch Facebook Posting dated Nov. 23, 2020.* On January 3, 2021, he posted that he was "prepared for chemical attacks and what not." *See Exhibit 7, Dresch Facebook Message dated Jan. 3, 2021.* On January 5, 2021, he stated "[s]top the steal. this is the last stand of the United States to remain free." *See Exhibit 8, Dresch Facebook Message dated Jan. 5, 2021.* On January 6, 2021, he boasted about his illegal entry into the Capitol and that he "took a l'il gas," and said that cops were "booking it." *See Exhibits 9a and 9b, Dresch Facebook Messages dated Jan. 6, 2021.* On January 7, 2021, he posted that "give the word and we will be back even stronger." *Exhibit 10, Dresch Facebook Posting dated Jan. 7, 2021.* These comments are in addition to the multiple self-pictures (i.e., "selfies") within the U.S. Capitol and on the grounds of the U.S. Capitol that defendant took on January 6, 2021, as well as the photos from outside of the rioters. The weight of the evidence with regard to his illegal presence within the U.S. Capitol on January 6, 2021 is strong, as is his intent in being there.

**(3) History and Characteristics**

Defendant is a convicted felon who has shown complete disregard for the law. As noted in the pre-trial services report, filed as an exhibit under seal, defendant was convicted in 2013 of fleeing and eluding arrest after engaging in a high-speed car chase across interstate lines. *Exhibit 11, WDMI Pretrial Services Report (filed under seal).* He was convicted in Michigan on December 11, 2017, of police officer – fleeing fourth degree, and operating – impaired, for which he received a year in jail and a fine. He was convicted in Wisconsin on April 22, 2014, of vehicle operator flee/elude officers and first degree recklessly endangering safety, for which he received 11 months of jail time and two years' probation. *Id., p. 4-5.* As noted in the police

13

reports for those incidents, attached to the certified copy of his Wisconsin conviction as Exhibit 12, a Wisconsin deputy observed a vehicle traveling above the speed limit when he began to pursue the vehicle, which in turn accelerated. The deputy continued pursuit, as the accelerating vehicle swerved around vehicles and traveled at rates over 140 miles per hour. The deputy radioed for assistance, and other deputies joined in pursuit, with marked cars and flashing lights and sirens. The vehicle entered Michigan and stopped with smoke coming from its tires. At that time, deputies ordered the driver, identified as defendant, to exit the vehicle; officers observed empty beer cans and detected the smell of alcohol. *See Exhibit 12, Certified Copy of Conviction and Attached Police Reports.*

In addition to his conviction for fleeing and eluding, defendant also was convicted of: disturbing the peace (Michigan, 9/12/2008, fine); permitting another to violate the motor vehicle code (Michigan, 2/4/2010, fine); and obstructing officer (Wisconsin, 11/11/2011, fine), as set forth in the pre-trial services report filed under seal. *Exh. 11, p. 4-5*.

Notwithstanding his status as a convicted felon, a search of defendant's residence pursuant to search warrants on January 19, 2021, and January 20, 2021, revealed multiple firearms and boxes of ammunition. Agents retrieved a Russian SKS assault-style rifle, 2 shotguns, a Glock pistol, and over 100 rounds of ammunition. *See Figures 3-4*. The ammunition found in the residence matched the ammunition found in the Atlanta Braves backpack, as shown above. The ammunition was found in a backpack containing a gas station receipt from a Maryland gas station on January 5, 2021, and with a Metro SmartTrip card. *See Figure 2*.

As part of the government's investigation in this matter, the government obtained a search warrant for defendant's phone. The government has obtained some of the defendant's communications from his mobile device. A few of these communications are noted below,

further demonstrating defendant's rejection of the seriousness of his actions, the likelihood that he would not respect any of the conditions imposed to ensure his appearance at trial, and the danger that he could pose to the community if released.

For example, on January 11, 2021, following the events of January 6, 2021, defendant engaged in the following exchange with another individual, identified as "Kenny," on Facebook Messenger. From the context, they appear to be referring to an individual, who the government refers to below as "Sharon S.," who had posted information about individuals she knew from the area who attended the riot.

- Dresch to Kenny, 11 January 2021 12:27:09 AM (UTC +0)
    - "Haha you think I trust these airwaves...fuckheads up there are mass snitching me to feds"
    - "Look up Sharon [S.]" [12:27:36 AM (UTC +0)]
- Dresch to Kenny, 11 January 2021 12:40:39 (UTC +0)
    - "Fuck her what they got ..call the cops bitch lol...I ain't saying shit"
    - "Alright bro just wanted to holler let everyone know...stand by and watch your block" [12:46:32 AM (UTC +0)]
- Kenny to Dresch, 11 January 2021 12:47:03 AM (UTC +0)
    - "Hear that I got a few dems on mine"
- Kenny to Dresch, 12 January 2021 12:56:16 AM (UTC +0)
    - "Just waiting for shit to go down"
- Dresch to Kenny, 12 January 2021 12:57:13 AM (UTC +0)
    - "**Yeah but when it's everywhere makes it so much harder to stop us**"

*See* Exhibit 13, *Selected Excerpts from Facebook Messenger Exchange with "Kenny"* (*emphasis added*).

Defendant exchanged additional comments on Facebook Messenger with another individual, "Fischer," about "Sharon S.'s" postings on Facebook. In part, he made the following comments:

Dresch to Fischer, 12 January 2021, 1:05:18 AM (UTC +0)

- "Ya I looked at her shit and the ones commenting on it are the same"

- "They're the ones always mess with my Facebook ads" [1:05:46 (UTC +0)]
- "Now they wanna snitch me out lol.. bunch of losers" [1:06:34 AM (UTC +0)]
- "I sent her thing to tons of Patriots now it's gone haha, I'm sure I made a FBI folder but fuck it I know who my enemies are" [1:08:11 AM (UTC +0)]

*See Exhibit 14, Selected Excerpts from Facebook Messenger Exchange with "Fischer."* On or about January 7, 2021, defendant engaged in the following text message exchange with another individual:

Dresch to "Mutti," 7 January 2021 4:34:50 AM (UTC +0)

- "Bro you shoulda been there....the news is all fake...and just to correct shit..we wasn't violent but we took the capitol....antifa didn't do it they may have had some idiots undercover in the crowd but it was us tat got in...and we didn't fuck shit up...I seen a broken window...we picked up water bottle s and shit cleaned up..it was grand ...best day ever**...I think it was a good show of force...look what we can do peacefully, wait til we decide to get pissed**"
- "**And look if they can't hold the capitol with thousands of cops, how can they tell us what to do 1000 miles away**" [4:37:21 AM (UTC +0)]

*See Exhibit 15, Selected Excerpts from Chat Exchange (emphasis added).*

This factor weighs heavily in favor of detention. Defendant, a convicted felon, who threatened the lives of innocent bystanders and police officers when he engaged in a high-speed car chase across interstate lines, lived in a residence with multiple firearms and ammunition, when he engaged in the unlawful conduct at the U.S. Capitol. The above discussions, after defendant's actions on January 6, continue to demonstrate defendant's disregard for the law, and hostility towards those who respect the democratic process; in his own words, he would be a danger to the community if released. Moreover, such conduct demonstrates that there would not be a set of conditions that could be imposed to ensure his presence at a trial of this matter.

**(4) Danger to the Community**

Defendant, a convicted felon who had flagrantly and dangerously disregarded the law on at least one prior occasion by engaging in a high-speed interstate car chase, knowingly and willfully entered the U.S. Capitol and engaged in a riot to disrupt the lawful democratic electoral process and obstruct justice. The multiple letters in support of defendant, outlining his willingness to help family and friends, do not detract from his actions and convictions which demonstrate an unwillingness to comport with laws whose goals are to protect society, nor do they contradict the fact that he has a solid history of controverting law enforcement and refusing to abide by the rule of law. They also cannot negate the impact of defendant's own words.

The facts of this case can be distinguished from the Court of Appeals' decision in *United States v. Munchel*, __ F.3d __, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021). In that case, the defendants did not have a criminal history, let alone criminal infractions demonstrating contemptuous actions towards law enforcement such as are present here. In this case, it was not just the "presence of the group," 2021 WL 1149196, *8, that prompted defendant to engage in these activities; rather, it was defendant's intent, as demonstrated through his own words and actions prior to and after January 6, that led to his illegal behavior. The *Munchel* opinion thus does not pertain to a case such as the one the Court is presented with here: that of a convicted felon, with access to multiple firearms and ammunition, who has previously, and in this specific instance, shown that he does not believe the law pertains to him.

With respect to the conduct surrounding the charges in this matter, defendant faced, with apparent glee, resistance from a police force, about which he boasted to others that he took "a little gas," and to which he paid no regard. He also stated that they would "be back." *Exh. 10.* Defendant made threatening statements after January 6, 2021, to include a comment further underscoring his disrespect for the law, and his unwillingness to abide by the law: "look if they

17

can't hold the capitol with thousands of cops, how can they tell us what to do 1000 miles away." *See Exhibit 15*. Defendant even offered to return following his incursion into the Capitol; which is not an insignificant statement in light of his illegal possession of firearms in his residence, and his lengthy background demonstrating an unwillingness to abide by the rule of law and respect for authority.

## CONCLUSION

There is no set of conditions that would guarantee the defendant's presence at a trial of the matter, nor ensure the safety of the community. The defendant's motion must be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:     */s/ Jennifer L. Blackwell*
Jennifer Leigh Blackwell
Assistant United States Attorney
D.C. Bar No. 481097
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 803-1590
Jennifer.blackwell3@usdoj.gov

## CERTIFICATE OF SERVICE

On this 12th day of April, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

>                     */s/   Jennifer Blackwell*
> Jennifer Leigh Blackwell
> Assistant United States Attorney