UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | No. 21-71 (ABJ) |
| v.        )( | Judge Amy B. Jackson |
| )( | Status Conference: May 12, 2021 |
| KARL DRESCH        )( | |

REPLY TO GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION FOR BOND

COMES NOW the defendant, Karl Dresch, by and through undersigned counsel, and respectfully replies to the Government's Response to Defendant's Motion for Bond. In support of this reply, Mr. Dresch would show:

1.  On January 19, 2021, Karl Dresch was arrested near his home in a small town on the Upper Peninsula of Michigan on a warrant that had originated from this District. The charges at issue in the warrant pertain to the events that occurred at the United States Capitol on January 6, 2021. On January 20, 2021, Mr. Dresch appeared before a Magistrate Judge in the United States District Court for the Western District of Michigan for an initial appearance. Mr. Dresch was presented on three charges: 1) Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)), 2) Disorderly Conduct on Capitol Grounds (40 U.S.C. § 5104(e)(2)(D)), and 3) Obstructing an Official Proceeding (18 U.S.C. 1512(c)). None of these charges are of the type that creates a presumption that Mr. Dresch should be held without bond. 18 U.S.C § 3142(e)(2),(3). Indeed, none of these charges are of the type that, by its nature, even qualifies Mr. Dresch for consideration for preventive detention. 18 U.S.C. §3142(f)(1). Nevertheless, the government moved for his preventive detention by claiming that, as a

1

general matter, he posed a serious risk of flight and a serious risk of obstruction of justice per 18 U.S.C. § 3142(f)(2)(A),(B).  Motion for Detention.

2. For Mr. Dresch's initial appearance, the Pretrial Services Agency for the Western District of Michigan prepared a report (PSA Report).  The report recommended that Mr. Dresch should be released on conditions with a $20,000 unsecured bond.  PSA Report at 6.  Even still, the Magistrate Judge in the Western District ordered that Mr. Dresch be held without bond pending trial, finding by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any person and the community and also finding by preponderant evidence that no condition or combination of conditions would reasonably assure his appearance at future proceedings.  Order of Detention Pending Trial (Detention Order) at 2.  Mr. Dresch's case was transferred to this District.

3. On February 3, 2021, a five-count indictment was filed against Mr. Dresch in this District.  At some point after this, Mr. Dresch was brought to this District by the United States Marshals Service.  Mr. Dresch was arraigned on that indictment on March 29, 2021.  A status conference has been set for May 12, 2021.

4. The five counts that Mr. Dresch is charged with in his indictment are: 1) Obstruction of an Official Proceeding (18 U.S.C. §§ 1512(c)(2), 2);  2), Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)); 3) Disorderly or Disruptive Conduct in a Restricted Building or Grounds 18 U.S.C. § 1752(a)(2)); 4) Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(D)); and 5) Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)).  Only count 1 is a felony.  As before, none of these charges are of the type that creates a presumption that Mr. Dresch should be held without bond (18 U.S.C. § 3142(e)(2),(3)) or that, by its nature, even qualifies Mr. Dresch for consideration for preventive detention (18 U.S.C. § 3142(f)(1)).

5. On April 1, 2021, Mr. Dresch filed a Motion to Lift Preventive Detention and Points and Authority in Support Thereof (Motion for Bond).

6. On April 12, 2021, the government filed a Government's Response to Defendant's Motion for Bond (Response).

7. In it Response, the government asserts that Mr. Dresch did not engage in the conduct he is accused of on January 6 because he got "caught up the day's events," Response at 12, or because of the "presence of the group," Id. at 17 (quoting United States v. Munchel, No. 21-3010, slip op. at 19 (D.C. Cir. March 26, 2021). Rather, the government asserts that Mr. Dresch intended beforehand to "interfere with the democratic process… [and cause] the disruption of the counting of the electoral votes," id. at 12, and to engage in "illegal behavior," id. at 17. The government makes this argument in an attempt to distinguish Mr. Dresch from the people who interfered with the functioning of Congress on January 6 simply being a part of the crowd—people who the Court of Appeals in Munchel indicates would pose less of a future danger than people who actually assaulted officers, destroyed property, or entered by force. Response at 17; see Munchel, slip op. at 19. Obviously, Mr. Dresch does not fit in this latter group. Nevertheless, the government argues he should be regarded like them anyway. The government argues that Mr. Dresch's "intent" to engage in illegal activity independent of the influence of the crowd has been "demonstrated by his words and actions prior to and after January 6." Response at 16.

8. In making the above argument, the government does not point to anything that Mr. Dresch has allegedly said or done that would indicate that he had actually formed the intent to disrupt the counting of the Electoral-College votes or even engage in any other specific illegal activity at the U.S. Capitol prior to the events that unfolded there on January 6. Moreover, in making the argument, the government appears to be relying heavily on Facebook messages that Mr. Dresch allegedly authored. Response at 3, 4, 5-6, 12-13, 14-16; Response, Attachments 7, 8, 9, 10, 11, 12, 14, 15. However, a review of Mr. Dresch's Facebook return, which has been provided to undersigned through discovery

pursuant to protective order, shows that, on January 5, 2021, a person identified as Mr. Dresch had a message exchange on Facebook with another individual.  In the exchange, the other individual asks the person identified as Mr. Dresch, "What's the goal of this [going to D.C. on January 6]?"  The individual then continues, "I heard they are going to start a civil war if things don't go our way."  To this, the person identified as Mr. Dresch responds, "Ya it may be necessary some day but could be done peacefully I think, I just figured Trump said be there maybe he needs bodies or something…. I'm not sure the point but Trump's the only big shot I trust right now so I'm going, making a trip out of it so even if it's pointless."  This message makes clear that, as late as the day before, the person identified as Mr. Dresch on Facebook had no plans to do anything on January 6 other than to be present in D.C. to support the then-sitting president.  Moreover, it is clear that the person was only envisioning engaging in peaceful activity. Thus, despite the government's arguments to the contrary, it is clear that, at least as of the day before, Mr. Dresch had not intended to engage any illegal activity on January 6.  Accordingly, it seems that, if he did indeed end up inside the Capitol on January 6 as the government alleges, he did so precisely because he got caught up in the crowd mentality that developed that day.

9. In its Response, the government frequently refers to Mr. Dresch's previous "disregard for the law," which it alternately describes as "flagrant," "complete," and "dangerous[]," as grounds for finding that he poses a danger to the community and a risk of flight.  Response at 11, 12, 16-18.  The previous disregard of the law by Mr. Dresch that the government refers to pertains to conduct that he engaged in 2013, when he got into a high-speed police chase across the Wisconsin-Michigan state line and ended up getting convictions in both jurisdictions for fleeing the police and a conviction in Michigan for Operating while Impaired.[1]  Id.  While the incident is obviously troubling, it must be noted

---

[1] According to the Pretrial Services Report (PSR) that was prepared for Mr. Dresch's initial appearance in Nevada, convictions related to this incident from Michigan are dated 12/11/17, and the conviction from Wisconsin is dated 4/22/14.  PSR at 4-5.  However, all the convictions pertain to the same event, which occurred on June 7, 2013.  Id.

that, according to the Pretrial Services Report (PSR) that was prepared for Mr. Dresch's initial appearance in Nevada, he served his jail sentence without reported incident and successfully completed the two years probation he was given. PSR at 4-5. Moreover, he has not had any other involvement with the police since this incident until his arrest in this case eight years later. Id. Additionally while Mr. Dresch does appear to have three prior convictions that pre-date the incident, these earlier convictions only resulted in him being given fines, PSR at 4, and thus should be considered minor. In light of this, it is unfair to view Mr. Dresch's impulsive conduct from one event eight years ago as being the event that defines who he is now.

   10. In his Motion for Bond, Mr. Dresch argues that he does not even qualify for consideration for preventive detention because he does not present a "serious risk of flight" or a "serious risk to obstruct justice" under 18 U.S.C. § 3142(f)(2)(A),(B). Motion for Bond at 6. Apart from the incident in 2013 where Mr. Dresch engaged in a high-speed police chase while under the influence, there is nothing in his background that would even suggest a risk of flight. However, as Mr. Dresch argues in his Motion for Bond, it does not follow that, just because he impulsively fled the police in an incident occurring eight years ago, he would now deliberately fail to come to court in this case—especially given his lifelong ties to the small rural community he lives in and the fact that, though he has had five criminal cases in the past, he has never failed to appear for court in any of them. Id. At this point, it should be pointed out that there is no evidence that Mr. Dresch tried to flee from the law-enforcement agents who came to arrest him in this case. Accordingly, even considering the police-chase event in 2013, it still cannot be said that Mr. Dresch poses a serious risk of flight. Id. As for Mr. Dresch posing a serious risk to obstruct justice, there is nothing in his past to suggest that this would be the case, and nothing he has done in this case indicates differently. See id. In its Response, the government does not address the arguments that Mr. Dresch makes in his Motion for Bond that he does not qualify for

5

consideration for preventive detention because he does not pose a serious risk of flight or a serious risk to obstruct justice.

    11.    In its Response, the government discusses at length the fact that four guns and ammunition were found in Mr. Dresch's residence after his arrest.  Response at 1, 6-10, 14.  According to the search-warrant materials the government has appended to its Response, the four guns that were allegedly found at Mr. Dresch's residence are 1) a "Russian SKS style rifle," 2) an unspecified "shot gun," 3) a "Glock, model 23, .40 caliber" handgun, and 4) a "Remington, model 1100, 12 Gauge shotgun[2]."  Response, Attachment 2 at 3; Response, Attachment 4 at 2.  The Russian SKS rifle and the Glock .40 handgun were found in upstairs bedroom closets.  Response, Attachment 2 at 8, Attachment 4 at 3.  The Remington shotgun was found in a closet of an unspecified bedroom.  Response, Attachment 4 at 3.  However, diagrams of Mr. Dresch's house that were prepared by searching officers show that the only bedrooms with closets in Mr. Dresch's house are on the second floor.  Response, Attachment 2 at 5-6.  Thus, it appears that this gun was also found in an upstairs bedroom closet.  The unspecified shotgun was found in an upstairs "hall room."  Response, Attachment 2 at 3, 6.  A diagram prepared by searching officers shows that this "hall room" is essentially a walk-in-closet-type room that has three access points—one to the hallway, another to a spare room, and the third to the closet in the master bedroom (i.e., the "room" can be accessed as a continuation of the master bedroom closet).  Response, Attachment 2 at 6.

    12.    Mr. Dresch's house is not actually his; it is owned by his mother, Linda Dresch.  Recently, Mr. Dresch's mother has submitted materials to the Bureau of Alcohol, Tobacco, and Firearms (ATF) regarding her ownership both of the house and of weapons and ammunition found in the house.  Attachment, Materials Submitted to ATF by Linda

---

[2] In its Response, the government describes the Remington shotgun as a "rifle."  Response at 9.  This is a mistake.  The picture of the gun that the government uses in its Response shows that it is a shotgun.  Response at 10.  Moreover, the search-warrant materials expressly describe the gun as a "Remington, model 1100, 12 Gauge shotgun."  Response, Attachment 4 at 2.

6

Dresch. In an affidavit she submitted as part of those materials, Ms. Dresch attests that "the Russian rifle, the Glock, and one of the shotguns" found in her house after her son's arrest in this case originally belonged to her husband and passed to her when he died in 2006. Attachment at 9. In the affidavit, Ms. Dresch further attests that she purchased the house as a second home in 2008 and that, sometime between 2008 and 2011, she put the three guns that had originally belonged to her late husband in "upstairs bedrooms closets" there for storage. She did this because she did not want the guns in her primary residence, which is where her grandchildren would visit her. Id. In her affidavit, Ms. Dresch indicates that her son moved into her second house only in the "last couple of years." Thus, it appears that at least three of the four guns found at Mr. Dresch residence had initially been placed there for storage several years before Mr. Dresch even moved in.

13. The items recovered from Mr. Dresch's residence were located during two different searches. The first search occurred on January 19, 2021, the same day that Mr. Dresch was arrested in this case. Response, Attachment 2 at 1. It is clear that Mr. Dresch had already been arrested before the search began and that he was somewhere else when the search occurred. Id. at 2. In regards to firearms, only the Russian SKS rifle and one of the shotguns were found. Id. at 3-4, 7-11. During the search, law-enforcement officers searched both floors of the residence and removed the evidentiary items and apparent contraband they found, including the guns and ammunition they found. Id. at 1. The officers entered the house through an "unlocked" door. Id. No one was present in the house at the time of the search, and the officers did NOT lock the house upon their departure. Id. at 2. The second search occurred on January 21, 2021.[3] Response, Attachment 4 at 1. The entry team for the search reported "that the entry point was not unsecured as it had been left on January 19th and forced entry was required." Id. at 2. As

---

[3] In it Response, the government indicates that the second search occurred the day after the first search. Response at 9. This is incorrect. The first search occurred on January 19. Response, Attachment 2 at 1. The second search occurred 2 days later, on January 21. Response, Attachment 4 at 1.

7

with the first search, no one was present in the house at the time of the search.  Id.  The second search turned up the .40 caliber handgun, the second shotgun, assortments of ammunition, and a Ziploc of suspected marijuana.  Id.  The government indicates that both searches occurred pursuant to federal search warrants.  Response at 6, 9.  While it is perhaps understandable how one of the above items discovered during the January 21 search could have been overlooked during the search of January 19, it is much harder to understand how all of them could have been overlooked.  Accordingly, it appears that some, if not all, of the items may have been placed in the residence after the first search.  This conclusion is bolstered by the fact that the house door was found locked when the second search occurred on January 21, thus establishing that someone came to the house between the first and second searches.  It should be noted that, since his arrest on January 19, prior to the first search, Mr. Dresch has been continuously detained in this case.

14.     The SKS rifle that was allegedly found at Mr. Dresch's residence is not a modern rifle.  Internet research shows that the SKS rifle was manufactured in Russia for its Army starting in 1945.  The SKS rifle was last manufactured in Russia in 1958.  See en.wikipedia.org/wiki/SKS.  The rifle allegedly found at Mr. Dresch's residence would therefore have to be at least over 60 years old.

15.     In its response, the government states that Mr. Dresch's Facebook posts from the day of the events at the Capitol show he had "apparent glee" at the resistance he faced from the police force protecting the building that day.  Response at 17.  The government cites this as evidence that Mr. Dresch poses a future danger to the community.  Id. at 17-18.  The government overlooks the fact that part of the reason the person identified as Mr. Dresch on Facebook talks about the resistance at the Capitol on January 6 is to stress how peaceful the persons who occupied the Capitol were in the face of that resistance.  For instance, at 12:11 a.m. on January 7, 2021, the person posted, "I can't say I saw any violence from our people, despite all the poking of the capitol police, gassing randomly into woman and children being peaceful, beating old men we kept it chill."  See

8

Response, Attachment 1 at 5. Moreover, a few hours later, the person posted, "[W]e didn't fuck shit up…I seen a broken window…we picked up water bottles and shit cleaned up [ellipses in original]." Response, Attachment 16. These posts are consistent with posts the person identified as Mr. Dresch made on Facebook on January 6. At 4:46 p.m., the person posted, "It was peaceful… still got a lil gas tho [ellipsis in original]," and at 6:09 p.m., the person posted, "[W]e broke no glass, no shoving I seen." See Response at 5, Attachment 1 at 7. At this point, it bears mentioning that not only does the government not have any evidence that Mr. Dresch assaulted anyone, destroyed any property, or made any kind of forced entry at the Capitol on January 6; it has not presented any evidence that he was even present when any such conduct occurred. It thus appears that Mr. Dresch's experience of the events at the Capitol was very different from the way those events are being portrayed both by the government and the media. This is not to say that the government and the media are portraying things falsely. Rather, it is just to point out that, if Mr. Dresch was present at the Capitol on January 6, he did not participate in, witness, or experience the more disturbing behavior that occurred that day. This should be kept in mind when considering the comments about January 6 that the government claims Mr. Dresch made on Facebook afterwards. See, e.g., Response at 12, 14-15.

      WHEREFORE, the defendant, Karl Dresch, replies to the Government's Response to Defendant's Motion for Bond.

                              Respectfully submitted,

                              _____/s/_____
                              Jerry Ray Smith, Jr.
                              D.C. Bar No. 448699
                              Counsel for Karl Dresch
                              717 D Street, N.W.
                              Suite 310
                              Washington, DC 20004
                              E-mail: jerryraysmith@verizon.net
                              Phone: (202) 347-6101