IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KARL DRESCH,<br><br>Defendant. | CR NO. 21-CR-0071 (ABJ) |

### GOVERNMENT SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Karl Dresch to six months' imprisonment, a $1,000 fine, and $500 restitution.

I. **Background**

A. **Procedural Background**

Defendant Karl Dresch was arrested on January 19, 2021, for crimes associated with his participation in the riot at the U.S. Capitol on January 6, 2021. Dresch was ordered detained after a hearing before the magistrate judge in the Western District of Michigan. During his transport to the District of Columbia for appearance on the complaint, he was indicted by a federal grand jury for crimes associated with his actions on January 6, 2021, including the felony of Obstruction of an Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2). The defendant filed a motion for bond, which this Court denied in a memorandum opinion on May 27, 2021. The defendant appealed from that order, and no decision has been reached by the D.C. Circuit Court of Appeals. The defendant remains detained.

At a status conference on July 2, 2021, the parties informed the Court that discovery and plea negotiations were ongoing. The Court set the next status conference for Wednesday, August 4, 2021. The parties transmitted a fully-executed plea agreement to the Court on Friday, July 30, 2021. The defendant has indicated in the plea agreement that he will agree to plead guilty to Count Five of the indictment, 40 U.S.C. § 5104(e)(2)(G). As part of the agreement, the government will recommend to the Court that the remaining charges be dismissed.[1] Pursuant to the agreement, the defendant agrees to pay restitution to the Department of Treasury in the amount of $500.

### B. Factual Background

The defendant, Karl Dresch, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than a million dollars' worth of property damage. The government recognizes that Karl Dresch did not personally engage in violence or property destruction on that date. The defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the Capitol would not have been breached and efforts to interrupt the certification likely would have failed.

The facts regarding the defendant's preparation for and trip to Washington, D.C. on January 6, 2021, are well-known to this Court. By on or about December 16, 2021, the defendant posted information to his Facebook account which was focused on the January 6, 2021,

---

[1] While the defendant was originally charged with a violation of 18 U.S.C. § 1512, after careful review of this matter and in an effort to achieve consistency with respect to these cases, the government concluded that it was appropriate to offer the defendant a plea to a misdemeanor.

3

certification, and which equated the planned events for January 6, 2021, with the historical events on July 4, 1776. *Statement of Facts, ¶ 13*.

By January 3, 2021, the defendant posted that he was preparing to go to "DC," and was "prepared for chemical attacks and what not." *Id.* ¶ 14. He also urged others to do so by way of his Facebook account, writing, "NO EXCUSES! NO RETREAT! NO SURRENDER! TAKE THE STREETS! TAKE BACK OUR COUNTRY! 1/6/2021=7/4/1776." *Id.* Between January 3, 2021, and January 6, 2021, other posts on defendant's Facebook account reflect preparations to arrange travel and then travel to Washington, D.C., for that purpose.

Facebook records further show that, at about 3:14 p.m. on January 6, 2021, defendant posted a photograph of an area within the U.S. Capitol known as the "Crypt," with the title, "We are in." *Id. ¶ 17*. A review of surveillance video from the U.S. Capitol on that date confirmed that the defendant entered the U.S. Capitol through a door, went to the Crypt and Visitor's Center, and departed the U.S. Capitol through the same door through which he entered approximately 25 minutes later. The defendant did not engage in acts of physical violence or destruction of property while in the U.S. Capitol.

The defendant admitted that he knew he did not have permission to enter the Capitol building and that he acted with the intent to parade, demonstrate, and picket within the building. In part, he sought to parade, demonstrate, and picket against the certification of the electoral vote. *See Statement of Offense attached to the Plea Agreement, ¶¶ 8-11*.

**II.    Statutory Penalties**

The defendant has agreed to plead guilty to one misdemeanor, 40 U.S.C. § 5104(e)(2)(G). As noted by the plea, the defendant faces up to six months of imprisonment and a fine of up to $5,000, in addition to his agreement to pay restitution in the amount of $500. *See* 40 U.S.C.

§ 5109(b). An offense under 40 U.S.C. § 5104(e)(2) does not carry a term of supervised release. The sentencing classification statute states that a federal offense with a six-month maximum term, and without an accompanying letter classification, is a Class B misdemeanor. *See* 18 U.S.C. § 3559(a)(7). For purposes of Title 18, a "petty offense" includes certain Class B misdemeanors. *See* 18 U.S.C. § 19. Title 18 provides terms of supervised release for any misdemeanor offense "other than a petty offense," 18 U.S.C. § 3583(b)(3). Since this offense is a petty offense, it does not carry a term of supervised release. Because this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### III.  Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events. So, too, does the conviction this defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol some other day, without other rioters present.

While each defendant should be sentenced based on their individual conduct, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, each defendant's individual conduct must be assessed on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical facts, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

Prior to the defendant's unlawful entry into the U.S. Capitol on January 6, 2021, the defendant posted several commentaries on social media regarding his views on the election. For example, on December 20, 2020, defendant posted, "7-4-1776 = 1-6-2021," thereby equating the events of January 6, 2021, with this country's declaration of independence from British rule.

By January 3, 2021, defendant posted that he was preparing to go to "DC," and was "prepared for chemical attacks and what not." *Id.* He also urged others to do so by way of his Facebook account, writing, "NO EXCUSES! NO RETREAT! NO SURRENDER! TAKE THE STREETS! TAKE BACK OUR COUNTRY! 1/6/2021=7/4/1776."

Surveillance video shows that the defendant entered the U.S. Capitol through a door, and that he spent approximately 25 minutes inside the U.S. Capitol, including in the Crypt area and Visitor's Center. Surveillance video indicates that the defendant departed the U.S. Capitol through the same door, while others were entering through nearby doors and engaging in physical contact with law enforcement who were attempting to keep rioters out of the U.S. Capitol. The defendant did not engage in physical violence or destruction of property, nor join others attempting to enter the U.S. Capitol in physical violence.

Later on social media, the defendant posted that "**we the people took back our house**, . . . now **those traitors Know who's really in charge**." *Statement of Facts,* ¶ *20*. The defendant also showed awareness of the use of chemical agents to repel the rioters in the Capitol, as shown by the fact that when another Facebook user stated, "Word is police are getting ready to use tear gas," the defendant responded, "Been using it. Mask up." *Id.* ¶¶ *21-23*.

The defendant later expressed satisfaction and enthusiasm regarding the events at the Capitol. At approximately 5:18 p.m. on January 6, 2021, defendant further commented, "That's right outside the house of representative...we got in! Took a lil gas ...wtf I love masks now!" *Id.* ¶ *25*. Defendant also stated: "Had the cops booking it." *Id.* ¶ *26*.

At about 8:32 p.m., commenting on a picture of a crowd at the Washington Monument, the defendant posted, "Total Victory!" *Id.* ¶ *28*. At 8:44 p.m., the defendant posted, "I'm excited!" *Id.* The next day, on January 7, 2021, at about 9:36 a.m., defendant commented on an unidentified

7

post that "Mike Pence gave our country to the communist hordes, traitor scum like the rest of them, we have your back give the word and we will be back even stronger." *Id.*

The nature and circumstances of the offense support a sentence of incarceration for the defendant. He celebrated on social media the fact that the rioters were being met with gas, and that the police force was overwhelmed. These were not the actions of a "peaceful protestor," or of someone who became caught up in day's events: he knew why he was there -- to interfere with the democratic process -- and what he sought to achieve -- the disruption of the counting of electoral votes. This intent is manifested in his own words before and after January 6. Although he did not engage in acts of physical violence or destruction, or remain in the U.S. Capitol for a lengthy time period, his reaction to the events of the day and statements on social media show his support for the riot and his encouragement of the rioters through his own participation. As the Court found in its order regarding detention, the defendant's "statements before, during, and after give rise to concerns that defendant was not only an enthusiastic, boastful participant in the assault on democracy that day, but that he stands ready to do it again." *Memo. Op. ECF No. 25, at 18 (May 27, 2021)*.

### B. The History and Characteristics of the Defendant

The Court is very familiar with the defendant's criminal history through litigation over the bond motion. Defendant is a convicted felon who has shown disregard for the law. The defendant was convicted in 2013 of fleeing and eluding arrest after engaging in a high-speed car chase across interstate lines. As noted in the police reports for those incidents, a Wisconsin deputy observed a vehicle traveling above the speed limit when he began to pursue the vehicle, which in turn accelerated. The deputy continued pursuit, as the accelerating vehicle swerved around vehicles and traveled at rates over 140 miles per hour. The deputy radioed for assistance, and other deputies

joined in pursuit, with marked cars and flashing lights and sirens. The vehicle entered Michigan and stopped with smoke coming from its tires. At that time, deputies ordered the driver, identified as defendant, to exit the vehicle; officers observed empty beer cans and detected the smell of alcohol.

In addition to his conviction for fleeing and eluding, defendant also was convicted of: disturbing the peace (Michigan, 9/12/2008, fine); permitting another to violate the motor vehicle code (Michigan, 2/4/2010, fine); and obstructing officer (Wisconsin, 11/11/2011, fine), as set forth in the pre-trial services report filed under seal.

Notwithstanding his status as a convicted felon, a search of defendant's residence pursuant to search warrants on January 19, 2021, and January 20, 2021, revealed multiple firearms and boxes of ammunition. Agents retrieved a Russian SKS assault-style rifle, 2 shotguns, a Glock pistol, and over 100 rounds of ammunition. The ammunition found in the residence matched the ammunition found in the Atlanta Braves backpack. The ammunition was found in a backpack containing a gas station receipt from a Maryland gas station on January 5, 2021, and with a Metro SmartTrip card.

If the Sentencing Guidelines applied to his offense of conviction, the defendant would have 5 criminal history points and would be in Criminal History Category III. U.S.S.G. § 4A1.1. Defendant, a convicted felon, who threatened the lives of innocent bystanders and police officers when he engaged in a high-speed car chase across interstate lines, lived in a residence with multiple firearms and ammunition, when he engaged in the unlawful conduct at the U.S. Capitol. Thus, this factor favors a sentence of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack

on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, and the defendant's history and characteristics, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Given the defendant's history and characteristics, and his proven attitude towards respect for law enforcement and the rule of law, it is clear that specific deterrence could only be attained through a period of incarceration.

The demands of general deterrence also weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. The violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, and the defendant's history and characteristics, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Given the defendant's history and characteristics, and his proven attitude towards respect for law enforcement and the rule of law, it is clear that specific deterrence could only be attained through a period of incarceration.

The demands of general deterrence also weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. The violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on their individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. While misdemeanor defendants may generally fall on the lesser end of that spectrum, the defendant's factors weigh heavily on the higher end of the spectrum for misdemeanor conduct. At this time, no unwarranted sentencing disparities exist, nor does the government's request create one.

### IV.  Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a). These sentencing factors all weigh in favor of the maximum term of

imprisonment, based on the defendant's history and characteristics, the nature of the offense, general and specific deterrence, and the need to avoid sentencing disparities. Such a sentence protects the community, promotes respect for the law, and deters future crime.

    Respectfully submitted,

    CHANNING D. PHILLIPS
    ACTING UNITED STATES ATTORNEY
    D.C. Bar No. 415793

    By:   */s/ Jennifer L. Blackwell*
    Jennifer Leigh Blackwell
    Assistant United States Attorney
    D.C. Bar No. 481097
    555 4th Street, N.W.
    Washington, D.C. 20530
    Phone: (202) 803-1590
    Jennifer.blackwell3@usdoj.gov

CERTIFICATE OF SERVICE

    On this 3rd day of August, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

                                                        /s/   *Jennifer Blackwell*
                                                        Jennifer Leigh Blackwell
                                                        Assistant United States Attorney