1    IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 21-cr-71
4                    Plaintiff,     )
                                    ) PLEA AND SENTENCE
5    vs.                            )
                                    ) Washington, DC
6    Karl Dresch,                   ) August 4, 2021
                                    ) Time:  9:30 a.m.
7                    Defendant.     )
     _____
8
                 TRANSCRIPT OF PLEA AND SENTENCE
9                        HELD BEFORE
         THE HONORABLE JUDGE AMY BERMAN JACKSON
10             UNITED STATES DISTRICT JUDGE

11   _____

                     A P P E A R A N C E S
12

13   For Plaintiff:     Jennifer Leigh Blackwell
                        Assistant United States Attorney
14                      555 4th Street, N.W.
                        Washington, D.C. 20530
15                      (202) 803-1590
                        Jennifer.blackwell3@usdoj.gov

16   For Defendant:     Jerry Ray Smith, Jr.
                        Jerry Ray Smith, Jr., Attorney at Law
17                      717 D Street, NW
                        Suite 310
18                      Washington, DC 20004-2812
                        (202) 347-6101
19                      Jerryraysmith@verizon.net

20   _____

21   Court Reporter:        Janice E. Dickman, RMR, CRR, CRC
                            Official Court Reporter
22                          United States Courthouse, Room 6523
                            333 Constitution Avenue, NW
23                          Washington, DC  20001
                            202-354-3267
24

25

1          MR. SMITH:  Good morning, Your Honor.

2          THE COURTROOM DEPUTY:  Your Honor, this morning we

3     have criminal case No. 21-71, the *United States of America v.*

4     *Karl Dresch*.  The defendant is present and in the courtroom.

5          Will counsel for the government please proceed to her

6     microphone and identify herself for the record.

7          MS. BLACKWELL:  May it please the Court, Assistant

8     United States Attorney Jennifer Blackwell appearing on behalf

9     of the United States.

10          THE COURT:  Good morning.

11          THE COURTROOM DEPUTY:  Counsel for the defendant.

12          MR. SMITH:  Good morning, Your Honor.  Jerry Smith,

13     attorney for Karl Dresch, who is present.

14          THE COURT:  You'll have to be seated.  If you've been

15     vaccinated, and when it comes time to speak, I think it

16     actually helps the court reporter if you remove your mask when

17     you speak into the microphone.  And given the circumstances and

18     my desire to not require you to share the lectern and share the

19     microphone, you can address the Court from where you're seated

20     and use the microphones there for that purpose.  And you can

21     decide, Mr. Smith, though, if you would prefer to use this

22     lectern, or you would prefer Mr. Dresch to use this lectern,

23     he's welcome to do that, too.

24          MR. SMITH:  I would be comfortable, Your Honor.  I

25     know typically when pleas are done the defendant and the

1    attorney approach the lectern and stand there together.  I'm

2    fully vaccinated and I'm comfortable doing that with

3    Mr. Dresch, if the Court is okay with that.

4         THE COURT:  All right.  We are.  And I think

5    everybody -- there's plenty of protection between you and the

6    courtroom personnel, and so I'm fine with that.  It's a very

7    personal, important event and I'm glad that you've decided to

8    do it in person, instead of by video, given the solemnity of

9    the occasion.  And I'm fine with the two of you using the

10   lectern when we get to that point.

11        I do want to note that we invite members of the press

12   and the public to listen in to these proceedings on the public

13   line, and you have an absolute right to attend and report on

14   what transpires during court proceedings, but the recording or

15   dissemination of a recording of these proceedings is a

16   violation of our court rules.

17        All right.  Mr. Smith, I understand the defendant

18   wishes to enter a plea of guilty this morning, is that correct?

19        MR. SMITH:  Yes, Your Honor.

20        THE COURT:  All right.  Before we proceed any

21   further, our deputy clerk needs to administer the oath to the

22   defendant.  And why don't you and Mr. Dresch come up to the

23   lectern at this time.

24        (Whereupon Karl Dresch was duly sworn.)

25        THE COURT:  All right.  Mr. Dresch, the purpose of

1    this hearing this morning is for you to make a decision,

2    whether you want to go to trial on the government's charges

3    against you or whether you want to enter a plea of guilty.  In

4    order to make such an important decision, it's essential that

5    you understand everything that's going on and that I'm going to

6    be explaining to you.  If you don't understand something that I

7    ask, please let me know and I will try to restate it and

8    explain it in a more clear fashion.

9            Also, if at any point you want to consult with your

10   lawyer before you answer one of my questions, you have the

11   right to do that.  Do you understand that much?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Okay.  And do you also understand that

14   you're now under oath and that if you don't answer my questions

15   truthfully, that that itself could be the offense of perjury or

16   making a false statement?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  Now, Mr. Smith, as I

19   understand it, the defendant's going to plead guilty to a

20   misdemeanor:  Parading, demonstrating or picketing in a Capitol

21   building, in violation of 40 U.S. Code § 5104(e)(2)(G).  The

22   remaining counts will be dismissed and he will be sentenced

23   today; is that correct?

24           MR. SMITH:  Yes, Your Honor.

25           THE COURT:  And also as a part of the plea he's

1    agreeing to pay restitution and to participate in a debriefing

2    interview conducted by law enforcement.  Is that also correct?

3              MR. SMITH:  That is correct, Your Honor.

4              THE COURT:  And he is asking to be sentenced today,

5    which, given the statute, would have to be limited to a

6    sentence of time served.  Is that basically the outline of the

7    plea, as I understand it?

8              MR. SMITH:  It is, Your Honor.

9              THE COURT:  Okay.  And, Mr. Dresch, do you generally

10   understand that those are the terms of the agreement, even

11   though I'm going to go over all of them with you later?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Okay.  Now, in order to decide whether I

14   should accept your guilty plea this morning it's necessary for

15   me to make sure that you understand the consequences of a plea

16   of guilty and the terms of your plea.  So the law requires me

17   to ask a number of questions of you and some of them are

18   personal, but they're all designed so that I can be sure that

19   you know what you're doing today.

20             To start, can you tell me how old you are?

21             THE DEFENDANT:  Forty-one years old, Your Honor.

22             THE COURT:  All right.  And I know the answer to this

23   question, but can you read and write?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  How far did you go in school?

1           THE DEFENDANT:  Finished high school.

2           THE COURT:  Okay.  And where were you born?

3           THE DEFENDANT:  New Haven, Connecticut.

4           THE COURT:  Have you taken any drugs or alcohol in

5    the last 48 hours or any medicine that could affect your

6    ability to understand what you're doing by pleading guilty?

7           THE DEFENDANT:  No, Your Honor.

8           THE COURT:  Have you ever received any treatment for

9    any type of mental illness or emotional disturbance?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Have you received a copy of the

12   indictment pending against you, the charges in this case, and

13   have you fully discussed the charges in the case with your

14   lawyer?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Are you completely satisfied with the

17   services of your lawyer in this case?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Have you had enough time to talk with him

20   and discuss the case and the plea offer and whether or not you

21   should accept it?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Ms. Blackwell, are you aware of the

24   existence of any exculpatory information in this case that has

25   not been produced to the defendant?

1     MS. BLACKWELL:  No, Your Honor.

2     THE COURT:  All right.  And based on the defendant's

3 sentencing memo and what I learned during the bond proceedings,

4 I appreciate the fact that the assistant United States attorney

5 in this case has been forthright from the start about what this

6 defendant did, but significantly, what he didn't do.  And I

7 expect that of every prosecutor in this courtroom, and I

8 appreciate that on your part, Ms. Blackwell.

9     MS. BLACKWELL:  Thank you, Your Honor.

10    THE COURT:  All right.  You can be seated.

11    Now, Mr. Dresch, you have certain rights in a

12 criminal case and I have to go over all of them with you.

13 First of all, most important, you have a right to plead not

14 guilty and have a jury trial in this case, and that would mean

15 that 12 citizens of the District of Columbia would sit over

16 there in that jury box and they would be the ones who determine

17 your guilt or innocence based on evidence presented in this

18 courtroom.  Do you understand that you have a right to a jury

19 trial?

20    THE DEFENDANT:  Yes, Your Honor.

21    THE COURT:  And do you understand that if you had a

22 trial, you would have the right to be represented by your

23 lawyer at that trial?

24    THE DEFENDANT:  Yes, Your Honor.

25    THE COURT:  And do you also understand that at a

1    trial you would have the right, through your lawyer, to

2    confront and cross-examine the witnesses against you?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  And do you understand that you would have

5    the right to present your own witnesses, and the right to

6    subpoena them and require them to be here to testify in your

7    defense?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And do you also understand that if there

10    were a trial, you would have the right to testify and present

11    evidence on your behalf, if you wanted to, but you wouldn't

12    have to testify or present any evidence if you didn't want to

13    because you can't be forced to incriminate yourself or present

14    evidence in your own trial.  Do you understand that?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  All right.  And do I also understand that

17    unless and until I accept your guilty plea, right now you are

18    presumed by the law to be innocent and it remains the

19    government's burden to prove your guilt beyond a reasonable

20    doubt and until it does, you can't be convicted of a crime?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  So, now do you understand that if you

23    plead guilty in this case and I accept your guilty plea, you're

24    giving up all the rights I've just explained because there will

25    not be a trial?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Now, I have in front of me a document

3     where you put that in writing, it says, "Waiver of Trial by

4     Jury," are you the one who signed it over the word "Defendant"

5     on the first page?

6          MR. SMITH:  Court's indulgence.

7          THE COURT:  Yes.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Okay.  I'm going to sign it, too.  I have

10    no idea what the date is.  What date is it?

11          THE COURTROOM DEPUTY:  August 4, Your Honor.

12          THE COURT:  Fourth.  All right.  Now, do you also

13    understand that if you went to trial and you were convicted,

14    you would have a right to appeal your conviction to the Court

15    of Appeals and to have a lawyer help you prepare that appeal?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Okay.  So do you understand that by

18    pleading guilty you're giving up your right to appeal, too,

19    including your right to appeal your sentence, unless I sentence

20    you to longer than the statute permits me to sentence you to,

21    or if your lawyer was ineffective in connection with this case.

22    But otherwise there's not going to be an appeal.  Do you

23    understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And the law has several provisions in the

1    Rules of Civil Procedure, in 22 U.S. Code § 2255, where after a

2    conviction people can come back and attack those convictions in

3    court, saying there's some legal flaw or factual flaw to them.

4    Do you understand that you're giving up your right to do that,

5    too, unless there's some newly discovered evidence or if your

6    lawyer was ineffective?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And do you understand that even if you're

9    permitted under those circumstances to bring a challenge,

10   you're giving up your right to appeal if that challenge doesn't

11   go well at the trial level?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Okay.  In addition the Federal Rules of

14   Evidence, the Federal Rules of Criminal Procedure have rules

15   that protect you and say if your plea gets withdrawn, the

16   government can't -- and there's a trial, the government can't

17   use as evidence against you the fact that you stood here and

18   admitted your guilt to me on the date you pled guilty.  But as

19   part of your plea, do you understand that you're giving up that

20   right, and if for some reason this plea gets withdrawn and you

21   end up at a trial, we can use in evidence against you the fact

22   that you admitted these facts today?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  So, and having gone over all of your

25   rights, do you want to plead guilty in this case and admit that

1    you committed a crime on January 6th and give up your rights to

2    a trial and your right to appeal and all the rights that I've

3    just explained you would have if your case went to trial?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Now, Mr. Dresch, I'm going to ask the

6    prosecutor to tell you and tell me what happened in this case.

7    And I want you to listen carefully because when she's finished,

8    I'm going to ask you if everything she told me is true and

9    accurate.  And I understand that we have a written statement of

10   offense in this case, but it is my practice -- not just in this

11   case, but in every case -- to have the prosecutor put the facts

12   on the record and have you hear them out loud and then tell me

13   if you agree with them or not.

14             So, Ms. Blackwell, can you please tell the Court and

15   the defendant what the government's evidence would show if this

16   case went to trial?

17             MS. BLACKWELL:  Your Honor, if this case went to

18   trial, the government would be prepared to present evidence

19   about the attack of the U.S. Capitol on January 6 of 2021.  We

20   would be prepared to show that on January 6 of 2021 a joint

21   section of the United States Congress convened at the U.S.

22   Capitol, which is located at First Street Southeast in

23   Washington, D.C., and during that session there were elected

24   representatives of the House and Senate that were meeting in

25   the chambers at the U.S. Capitol to certify the vote count of

1    the Electoral College on the 2020 presidential election which

2    had taken place on November 3rd of 2020.  That joint session

3    began at approximately 1 p.m.

4           Shortly thereafter, at approximately 1:30 p.m., the

5    House and Senate adjourned to separate chambers to resolve a

6    particular objection.  Vice President Mike Pence was present

7    and presiding, first in the joint session and then in the

8    Senate chamber.

9           As the proceedings continued and with Vice President

10   Pence present and presiding over the Senate, a large crowd

11   started to gather outside the U.S. Capitol.  There were

12   temporary and permanent barricades that were in place around

13   the exterior of the U.S. Capitol building, and U.S. Capitol

14   police were present and attempting to keep the crowd away from

15   the Capitol building.  But at approximately 2 p.m. certain

16   individuals in the crowd forced their way through, up and over

17   the barricades and officers of the U.S. Capitol and the crowd

18   advanced to the exterior facade of the building.  At that time

19   the certification proceedings were still underway and the

20   exterior doors and windows of the U.S. Capitol were locked or

21   were otherwise secured.

22          Members of the Capitol police attempted to maintain

23   order and keep the crowd from entering the Capitol.  However,

24   shortly after 2 p.m. individuals in the crowd forced entry into

25   the U.S. Capitol, including by breaking windows and by

1    assaulting members of law enforcement as others in the crowd

2    encouraged and assisted those acts.  This riot resulted in

3    substantial damage to the U.S. Capitol.  The government will be

4    prepared to show that it requires the expenditure of more than

5    $1.4 million for repairs.

6            In this case, with respect to Mr. Dresch's conduct,

7    the government would be prepared to show that on or about

8    January 3rd of 2021 Mr. Dresch posted that he was preparing to

9    go to Washington, D.C., and that between January 3rd and

10   January 6 of 2021, other posts on his social media account

11   reflected preparations to travel, and then travel to

12   Washington, D.C.

13           On January 6, Mr. Dresch entered the Capitol and he

14   posted pictures of himself and the crowd within the U.S.

15   Capitol, including within the crypt and in the Visitors'

16   Center.  He posted a statement on Facebook stating, "We, the

17   people, took back our house and those traitors know who's

18   really in charge."  At about 3:13 p.m., again on January 6 of

19   2021, Mr. Dresch posted a photograph taken outside the U.S.

20   Capitol with the comment, "Whose house?  Our house."

21   Mr. Dresch knew at the time that he entered the U.S. Capitol

22   building that he did not have permission to enter the building

23   and that Mr. Dresch paraded, demonstrated, or picketed on that

24   date.

25           THE COURT:  All right.  Mr. Dresch, is what the

1    prosecutor just told my a true and had accurate description of

2    what you did in this case?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And did you in fact enter the Capitol

5    building without permission on January 6th, when it was closed

6    to the public while Congress certified the results of the

7    Presidential election?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Now, Ms. Blackwell was reading from an

10   agreed statement of facts, and I have before me a document

11   called Statement of Offense.  On the last page it says

12   "Defendant's Acknowledgment," where it says, "I, Karl Dresch,

13   have read this statement of offense and have discussed it with

14   my attorney."  Are you the one who signed it over the space for

15   your signature, agreeing that it is true and that you're

16   signing it voluntarily?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  All right.  And are you the one who wrote

19   the initials K.D. and the date on every page, to let me know

20   that you'd read and agreed with every page of this document?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  All right.  I have one more document in

23   front of me, and it's a letter from Ms. Blackwell to your

24   lawyer that sets out the terms of the plea agreement.  Have you

25   had an opportunity to review this document and go over it with

 1     your lawyer?

 2               THE DEFENDANT:  Yes, Your Honor.

 3               THE COURT:  And are you the one who signed it on the

 4     last page, where it says, "Defendant's acceptance," indicating

 5     that you read every page of the agreement, discussed it with

 6     your attorney and you understand it and you agree to it?

 7               THE DEFENDANT:  Yes, Your Honor.

 8               THE COURT:  And are you the one also who initialed

 9     every page K.D., with the date, to let me know that you didn't

10     just sign the last page, you read every page of the plea

11     agreement?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  All right.  So I'm going to go over the

14     most important terms of it with you, I'm not going to read the

15     whole thing line by line.

16               As I understand it, you're agreeing to plead guilty

17     of the offense of parading, demonstrating or picketing in a

18     Capitol building, in violation of 40 U.S. Code § 5104(c)(2)(G).

19     Do you understand that if I accept your guilty plea in this

20     case, you could receive a maximum sentence of up to six months

21     in prison?

22               THE DEFENDANT:  Yes, Your Honor.

23               THE COURT:  And do you understand that I cannot

24     sentence you to a term of supervised release afterwards in

25     connection with that offense?  The entire sentence would be the

1    sentence of imprisonment.

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  And that is because the offense is a

4    class B misdemeanor, as defined by 18 U.S. Code § 3559(a)(7)

5    and under 18 U.S. Code § 19 a Class B misdemeanor, is what's

6    called a petty offense, and under 18 U.S. Code § 3583(b)(3)

7    supervised release is not available for a petty offense.

8         But, do you understand that I could sentence you to

9    pay a fine of up to $5,000 for this offense?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  And do you understand that you have to

12   pay a special assessment to the court of $10 for this

13   misdemeanor offense?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  And do you also understand that as part

16   of your plea agreement, there is an agreement that you're going

17   to be sentenced to pay restitution, $500, towards the total

18   damages to the U.S. Capitol that day, given your participation

19   in the events on that day?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  And do you understand that the plea

22   agreement includes an agreement by you to be interviewed by law

23   enforcement concerning the events surrounding January 6th and

24   your role in it?

25        THE DEFENDANT:  Yes, Your Honor.

1      THE COURT:  And do you understand that as a condition

2  of this plea agreement you're going to be doing that later

3  today?

4      MR. SMITH:  Yes, Your Honor.  We'll do it either

5  later today or tomorrow, depending on when he gets released.

6  If he gets released late tonight, I'm going to put him in a

7  hotel and then we'll go see the U.S. attorney in the morning.

8  Hopefully we'll get released in time to do it today, otherwise

9  we'll do it tomorrow.

10      THE COURT:  We're going to do everything we can do to

11  make sure the marshals get the release order as promptly as

12  possible.  But do you understand that you're going to be doing

13  that before you return home to Michigan?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  And do you understand that as part of

16  that interview you've agreed to make your phone and social

17  media accounts available to law enforcement?

18      THE DEFENDANT:  Yes, Your Honor.

19      THE COURT:  All right.  Now, this defendant's initial

20  appearance in this case was before the District Court in

21  Michigan on January 20th, 2021.  Given the maximum sentence

22  that can be imposed in this case and the length of time the

23  defendant has already been incarcerated, the parties have

24  requested that I sentence him today.  I find this is

25  appropriate and that it makes more sense than his immediate

1    release, for sentencing to be conducted on a later date.  I

2    received significant information about this defendant in

3    connection with the bond review motion, including detail about

4    his history and characteristics and his criminal history, as

5    well as the sort of letters that one would receive at

6    sentencing.  And so putting off the sentencing would serve no

7    purpose because once the six months has been served, there's no

8    opportunity to craft a period of supervised release or order

9    anything else.

10                In connection with that, though, ordinarily one of

11   the factors I would have to consider is what the U.S.

12   sentencing guidelines would recommend.  However, the parties

13   agree here that because the offense is a Class B misdemeanor,

14   as I've already stated, as defined by 18 U.S. Code

15   § 3559(a)(7), the sentencing guidelines do not apply, per

16   Section 1B1.9 of the guidelines.  So, Mr. Dresch, do you

17   understand that we're going to go straight into your sentencing

18   and you're going to be sentenced today?

19                THE DEFENDANT:  Yes, Your Honor.

20                THE COURT:  And do you understand that accomplishing

21   that means you're giving up your right to have a presentence

22   report prepared by the probation officer, having your lawyer

23   look at it and the government's lawyer look at it and getting

24   all that background information about you and your history

25   before I impose sentence?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Mr. Dresch, has anyone made any promises

3    to you about what sentence I'm going to impose in this case if

4    I accept your guilty plea?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Do you understand that it's up to me,

7    even though I can never sentence you to more than the statute

8    would permit?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Has anyone forced you, threatened you, or

11    coerced you in any way into entering this plea of guilty?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Has anybody made any promises to you in

14    connection with your guilty plea, other than the ones contained

15    in the plea letter or that we've talked about in court today?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Are you entering this plea of guilty

18    voluntarily and of your own free will because you are guilty

19    and for no other reason?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Is there anything you don't understand

22    about this proceeding or about your plea in this case?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Is there anything you want to ask me or

25    ask your lawyer before I ask you for your final decision about

1    pleading guilty in this case?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Are you ready now to make a decision

4    about whether you want to enter a plea of guilty or whether you

5    want to go to trial?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And what's your decision?

8              THE DEFENDANT:  To enter a plea of guilty, Your

9    Honor.

10             THE COURT:  All right.  I am satisfied that this

11   defendant is fully competent and capable of making a decision

12   today, that he understands the nature and consequences of what

13   he's doing, that he's acting voluntarily and of his own free

14   will, and that there is an adequate factual basis for his plea.

15   Therefore, I will accept the plea.

16             And pursuant to the request of the parties, I do

17   think it's appropriate to move on to the sentencing phase of

18   these proceedings.  But the first person I'm going to call upon

19   to speak is Ms. Blackwell.  So, if Mr. Dresch and Mr. Smith, if

20   you want to sit down for a moment --

21             MR. SMITH:  Thank you, Your Honor.

22             THE COURT:  -- you're permitted to do that.

23             All right.  Would the government like an opportunity

24   to speak regarding the appropriate sentence in this case?

25             MS. BLACKWELL:  Yes, Your Honor.

1          THE COURT:  All right.  Go ahead.

2          MS. BLACKWELL:  Your Honor, the government would

3     first like to move to unseal the sentencing memorandum that was

4     filed yesterday in this case.

5          THE COURT:  I think that's appropriate.  Do you have

6     any objection to that, Mr. Smith?

7          MR. SMITH:  No, Your Honor.

8          THE COURT:  And I think yours was filed under seal as

9     well.

10          MR. SMITH:  And I would also move to unseal mine.

11          THE COURT:  All right.  They will both be unsealed.

12          MS. BLACKWELL:  Your Honor, the Court is well

13     familiar with the facts of that case, Mr. Dresch's background,

14     but the government would like the opportunity to highlight a

15     few factors.

16          The government recognizes, of course, that Mr. Dresch

17     has already served the term of incarceration that represents

18     the statutory maximum in this case, but the government believes

19     it is important, as we did in the sentencing memorandum, to

20     outline why the 3553 factors would dictate a sentence of

21     imprisonment of the maximum in this case.

22          On the spectrum, Mr. Dresch's circumstances put him

23     at the high end with respect to the nature and circumstances.

24     While the government has indicated that Mr. Dresch did not

25     engage in any violence that day at the Capitol, or engage with

1   law enforcement in a physical manner, or cause the destruction

2   of property, indeed, he was in the Capitol for approximately 25

3   minutes.  He came in a door through the Senate side and then

4   later he left through a window next to that same door because

5   there were rioters that were actually coming into the Capitol

6   at that same time.  He could not leave through the door, so he

7   left, at the direction of law enforcement, through a window

8   next to the door.  During that time he traveled to the crypt

9   and visitors' center.

10          That being said, despite his conduct in the Capitol,

11  he was responsible for a number of social media postings both

12  before he went to the Capitol, equating the events of January 6

13  with this country's Independence Day, then afterward, as the

14  Court is aware, he made several comments showing his enthusiasm

15  and support for the events that occurred on January 6.  We

16  believe that those commentaries and those actions and that

17  support for what happed on January 6 -- which, of course, is an

18  extremely serious event in this nation's history -- would

19  warrant a term of incarceration at the higher end for this

20  defendant.

21          Specifically, with regard to his --

22          THE COURT:  You mean at the higher end of the

23  sentence available for the misdemeanor, not at the higher end

24  of all the sentences available for the other offenses in the

25  indictment?

1          MS. BLACKWELL:  Yes, Your Honor.  Thank you for the

2     clarification.

3          THE COURT:  All right.

4          MS. BLACKWELL:  In terms of his history and

5     characteristics, he would be in criminal history category 3,

6     with five points, if the sentencing guidelines applied in this

7     case.  As Your Honor is aware from reviewing the records for

8     his bond hearing, he was involved in a very serious incident

9     with law enforcement, fleeing and eluding law enforcement over

10    an interstate, high-speed car chase that endangered the lives

11    of not only of law enforcement, but the innocent civilians.

12    Clearly, the defendant has not learned from those past

13    incarcerations and infractions that these are serious events

14    and that he needs to stay out of criminal trouble, which he did

15    not do when he came to the Capitol on that date and

16    participated in the events on that date.  And, therefore, we

17    believe that under that factor that would warrant the maximum

18    term of imprisonment that is available for this misdemeanor.

19          With respect to the seriousness of the offense and

20    respect for the law, that criteria supports a term of

21    incarceration, even for misdemeanors, and certainly for

22    Mr. Dresch in this instance.

23          With respect to the need for specific and general

24    deterrence, it is specific because a six months of federal jail

25    time will hopefully deter Mr. Dresch from participating in this

1      kind of activity again, and also general because it is the

2      government's belief that others will be deterred from

3      participating in this kind of activity, with the knowledge that

4      they also can serve jail time even if they are pleading or

5      conducting themselves in misdemeanor infractions.

6              And last, with respect to the need to avoid

7      sentencing disparities.  Each case, of course, needs to be

8      evaluated based on its independent factors, but the government

9      is not aware that given the circumstances of this case, and

10     sort of the unique posture that this case presents itself in,

11     that a six-month prison term would cause any issues with

12     respect to any sentencings disparities with other defendants.

13             THE COURT:  All right.

14             MS. BLACKWELL:  Thank you, Your Honor.

15             THE COURT:  Thank you.  Before I impose sentence,

16     Mr. Smith, would you like to speak on the defendant's behalf?

17             MR. SMITH:  Just briefly, Your Honor.  I know that I

18     submitted a sealed sentencing memorandum, which has now been

19     unsealed.  Know Your Honor, of course, has read it.  I did want

20     to address a couple points.

21             The restitution, Mr. Dresch was deemed to be indigent

22     when he appeared in front of the magistrate in the Western

23     District of Michigan.  He was given court-appointed counsel

24     there.  I think the federal public defender for the Western

25     District represented him in those proceedings.  And, of course,

1     when he came here he was continued to be deemed indigent, and

2     I'm court-appointed counsel.  So I would submit he's not really

3     in a position to pay any sort of fine.  Of course, he will pay

4     the restitution and the $10 special assessment.

5              For the restitution, the $500, he can pay it in

6     fairly short order.  I'm not sure he's going to be able to

7     access the funds today.  We would ask for a two-week period,

8     perhaps, to get the money.  But it's just a matter of being out

9     and being able to get access to the funds so that he can pay

10    that in fairly short order.  I think that's really all I have

11    to say, everything else is in my memo.

12              THE COURT:  All right.

13              MR. SMITH:  If you have any questions, I would be

14    happy to answer.

15              THE COURT:  I don't have any questions.

16              Mr. Dresch, is there anything you would like to say

17    before I impose sentence in this case?

18              THE DEFENDANT:  No, Your Honor.

19              THE COURT:  All right.  I'm going to ask you, then,

20    to come back to the lectern then while I tell you what the

21    sentence is going to be in this case, and maybe speaking a

22    little bit longer than one might anticipate, given the fact

23    that it's a forgone conclusion.

24              I'm going to review all of the factors in the

25    sentencing statute, which is 18 U.S. Code § 3553(a) that says

1    what judges are supposed to think about when they sentence

2    people -- even though I don't have very much discretion, or any

3    discretion left at this time -- because I think it's important

4    to detail why I think the six months is an appropriate

5    sentence, even though it's already been served.  In other

6    words, I don't want to leave the misimpression that the rush to

7    plead and be sentenced and released today on time served is

8    some sort of statement about the legitimacy of the detention in

9    the first place.

10        My sentence is going to mean that the sentence was

11    sufficient and just under all the circumstances.  And every

12    defendant in every one of these cases is different, and every

13    sentence needs to be considered individually, in light of the

14    sentencing statute, and that's what I feel obligated to do.

15        The first thing I'm supposed to consider is the

16    nature and circumstances of the offense, which is what did you

17    do?  And this defendant did not end up in the Capitol by

18    mistake.  He was not simply swept along by events, and there

19    was no ambiguity about why he was here.  His own statements

20    provide the context for the acts described in the statement of

21    offense and they are part of the record.

22        Six weeks before January 6, on November 23rd, 2020,

23    the defendant posted, "It's war everywhere if we let this

24    election get stolen."  He was posting, "Stop the steal" as

25    early as December 16th, 2020.  The day after former President

1    Trump Tweeted, "Statistically impossible to have lost the 2020

2    election.  Big protest in D.C. on January 6, be there, be --

3    will be wild."  The defendant posted 7-4-1776 equals January 6,

4    2021.  So he was already likening it to a revolution.

5           The statement of offense specifically references the

6    fact that the defendant posted on social media about his plans

7    to travel to D.C. on January 3rd through January 5th.  Well,

8    what did he say?

9           On January 3rd, 2021 the defendant posted that he was

10    preparing to go to Washington, D.C. and that he was prepared

11    for chemical attacks and whatnot and, quote, No excuses, no

12    retreat, no surrender, take the streets, take back our country.

13    January 6, 2021 equals 7-4-1776.  That was all in caps.

14           On January 5th in 2021 he posted, "Stop the steal.

15    This is the last stand of the United States to remain free."

16    And then he gets here.  The U.S. Capitol was closed to the

17    public while, in accordance with the Constitution, a joint

18    session of Congress had been convened to certified the vote of

19    the Electoral College in the 2020 Presidential election.

20           Vice President Mike Pence, a Republican, was present

21    and presiding, as the Constitution required him to do.  The

22    U.S. Capitol police officers, federal law enforcement officers,

23    doing their jobs, surrounding the building, were overcome.  The

24    defendant was one of the many individuals who made their way

25    into the building, past the lines of the officers who were

1   attempting to keep the crowd away from the building.  He was

2   one of the individuals who entered the closed building.  And

3   the certification process was indeed interrupted as members of

4   Congress and the Vice President had to be spirited to safety or

5   were forced to hide.

6           That was the point of the trip, to disrupt the

7   process.  The defendant posted a picture at 3:14 p.m. with the

8   caption, "We are in, inside the Capitol, below the rotunda."

9   He broadcast a video, as he said, to set the record straight

10  "Antifa did not take the Capitol, that was patriots.  We, the

11  people, took back our house and now those traitors know who's

12  really in charge."

13          So he was not your typical tourist.  But it's also a

14  significant aspect of the nature and circumstances of this

15  offense that he did not do anything once he got inside.  He was

16  peaceful, he was respectful; he didn't break anything, he

17  didn't hurt anyone, and the sentence has to reflect that, too.

18  It's essential to differentiate him from those involved in

19  threats against public officials and assaults on police

20  officers.

21          However, the defendant bragged that day that they,

22  quote, had the cops booking it, close quote.  And his tone

23  didn't change afterwards.  He was not chastened or shocked if

24  he turned on the news and saw the defilement and destruction

25  that was left behind, or saw what happened to the many law

1    enforcement officers when, on January 7, 2021, he commented on

2    someone else's post by saying, "Mike Pence gave our country to

3    the communist hordes; traitor scum like the rest of them.  We

4    have your back.  Give the word and we will be back even

5    stronger."

6            On the same date he said, "Bro., you should have been

7    there.  We wasn't violent, but we took the Capitol.  Antifa

8    didn't do it.  They may have had some idiots undercover in the

9    crowd, but it was us that got in.  It was grand.  Best day

10   ever.  I think it was a good show of force.  Look at what we

11   can do peacefully" -- unclear whether it was peaceful, even

12   though he was -- "wait until we decide to get pissed.  And

13   look, if they can't hold the Capitol with thousands of cops,

14   how can they tell us what to do 1000 miles away?"

15           And then the defendant got wind of how others were

16   reacting to what had occurred and that they were naming names.

17   He posted a series of increasingly threatening messages about

18   the person he believed had posted information about individuals

19   she knew from the area who had come to D.C.  Including saying,

20   "Now they want to snitch me out, LOL.  Bunch of losers.  I sent

21   her thing to tons of patriots and now it's gone.  Ha a.  I'm

22   sure I made an FBI folder, but F it, I know who my enemies

23   are."

24           So the nature and circumstances of the offense makes

25   several things very clear.  The defendant did not come to D.C.

1    to attend a rally.  Defendant did not spend six months in jail

2    because of his political views.  He was not a political

3    prisoner.  He was not prosecuted for exercising his First

4    Amendment rights.  He just pled guilty to a federal offense.

5    He just admitted that he broke the law.  He did explain at the

6    time, "Trump is the only big shot I trust right now, so I'm

7    going."

8            But we're not here today because he supported the

9    former President.  Millions of people voted for him and did not

10   heed his call to descend on the nation's Capitol.  He was

11   arrested because he was an enthusiastic participant in an

12   effort to subvert and undo the electoral process.  He came to

13   D.C. and encountered others to do the same; not to hear the

14   outgoing President speak, but, as he put it, to stop the steal.

15   He was not here to see the sights.  He was here to interrupt

16   the certification of the election, to subvert democracy --

17   which is based on the will of the people -- and replace it with

18   a will of the mob.

19           He may very well have sincerely believed that the

20   election had been unfair and tainted.  I don't doubt that.  But

21   that belief was misguided.  By that time even the Republican

22   election officials in the challenged states had said over and

23   over, when more than 60 judges across the country had said --

24   including Republican judges, including judges appointed by

25   President Trump himself -- had said over and over, there is no

1    evidence behind these claims.  At the end of the day the fact

2    is that the defendant came to the Capitol because he placed his

3    trust in someone who repaid that trust by lying to him.

4          Mr. Dresch, I want to assure you, you did and you

5    still have the absolute right to support whoever you want to

6    support, to rally for whoever inspires you, to vote for whoever

7    you choose.  But so does everyone else.  Your vote doesn't

8    count any more than anyone else's.  You don't get to cancel

9    them out and call for a war because you don't like the results

10   of the election.  You called yourself and the others patriots,

11   but that's not patriotism.  Patriotism is loyalty to country,

12   loyalty to the Constitution; not loyalty to a single head of

13   state.  That's the tyranny we rejected on July 4th of 1776.

14         So this event did not honor our nation's founders; it

15   didn't honor anyone.  But to his credit, while the defendant is

16   a big talker, his actions did not match his rhetoric.  And,

17   therefore, I pressed the government at the last status hearing

18   to make a plea offer, and the misdemeanor plea is appropriate.

19   And resolving this case without additional incarceration or

20   without additional charges beyond the six months is

21   appropriate.

22         The second thing I'm supposed to think about when I

23   sentence someone, anyone -- and I go through this with everyone

24   in this courtroom, in every single case -- is the history and

25   characteristics of the defendant.  I talked about that a great

1    deal in the bond review motion and at the bond hearing.

2    There's a lot of information in the record.  I was well aware

3    of the convictions arising out of the drunk driving incidents,

4    although calling it drunk driving doesn't fairly characterize

5    the extreme risk posed to the life of others in the high speed

6    chase, through two states, when you refused to pull over.

7           But that's only one part of the picture.  You pled

8    guilty, you accepted responsibility here without any ambiguity

9    about it, and that's positive.  You're willing to make this

10   personal sacrifice that's going to be necessary to make amends

11   by paying restitution.  It's not a small amount of money.

12          It's also important to say that that day and all the

13   posts I read are not all that define you.  The people that

14   wrote letters to me described a man who is totally different

15   than the one on social media.  The record still contains all

16   the letters about your hard-working nature, your commitment to

17   being a good father to your 13-year-old son, your efforts to

18   help elderly neighbors, your sense of humor, your kindness, the

19   friendship that's available; that's all equally a part of who

20   you are.

21          It may be that being online gets you agitated; maybe

22   that's where you vent, maybe that's where you show off.  But

23   now you're a man in your 40s, with a teenage son.  So the

24   question is, which of those men do you want to be?  I hope you

25   spend some time thinking about how you can a positive force in

1    his life, the way your father was in yours, when you get home.

2           The Court's required to impose a sentence that's

3    sufficient but not greater than necessary to accomplish a

4    number of purposes set out in the statute.  Therefore, another

5    thing every judge has to consider is the need for the sentence

6    imposed to reflect the seriousness of the offense, to promote

7    respect for the law, and to provide just punishment for the

8    offense.  I think the punishment is just, but I think this is

9    really important because I'm not sure that respect for the law

10   has been really shown in the past or in the comments on social

11   media.

12           I'm supposed to deter you and other people from

13   further criminal conduct here or in Michigan or anywhere else.

14   I'm supposed to protect the public from further crimes

15   committed by you, and to provide you with educational or

16   vocational training, medical care, correctional treatment.  And

17   none of that is really relevant.

18           I'm also supposed to look at the need to avoid

19   unwarranted sentencing disparities among defendants with

20   similar records who have been found guilty of similar conduct.

21   And basically that's a long-winded way of saying I'm supposed

22   to make sure that your sentence is fair when you compare it to

23   sentences that people have gotten who did similar things.  The

24   guidelines are supposed to serve that function, they really

25   have limited utility here.

1          Ensuring that the sentence fairly reflects where this

2     individual defendant falls on the spectrum of individuals

3     arrested in connection with the offense has largely been

4     accomplished by the offer of the misdemeanor plea because it

5     reduces his exposure substantially and appropriately.

6          I also think it's important to take into

7     consideration that the six months this defendant spent in D.C.

8     jail while this case proceeded wasn't the same experience he

9     would have had a year or so before.  It's true, he was

10    incarcerated through no one's fault but his own, but his jail

11    experience has been overshadowed by the specter of the virus

12    the need for more isolation; less opportunity for contact with

13    counsel and family, less opportunity to move within the

14    facility.  In other words, he has been through hasher

15    conditions and limited opportunities for programs, which if

16    he'd had a longer sentence could have been a basis for a

17    departure when you're talking about immigrants in the *Smith*

18    case.

19          So, that's another reason why I can easily conclude

20    that the sentence is sufficient to provide just punishment and

21    to afford deterrence and to satisfy the need to avoid

22    unwarranted sentencing disparities.

23          The sentencing statute says I'm also supposed to

24    consider the need to provide restitution, and that is going to

25    be part of the sentence by agreement.

1    Therefore, in an exercise of my discretion, after

2    consideration of all the statutory factors, the sentence to be

3    imposed is as follows:  It's the judgment of the Court that you

4    are hereby sentenced to a period of time served on Count 5.

5         Since the statutes that govern criminal sentencing do

6    not permit a period of supervised release for this offense,

7    there will be no further term of supervised release.

8         I find the defendant does not have the ability to pay

9    a fine and, therefore, I waive the imposition of a fine.

10   However, you are required to pay the $10 special assessment,

11   and that's immediately payable to the Clerk of the Court for

12   the U.S. District Court of the District of Columbia.  And

13   within 30 days of any change of address you have to notify the

14   Clerk of the Court until such time as that obligation has been

15   paid in full.

16        You've also agreed to pay restitution in the amount

17   of $500.  I'm not sure I have, in any of the paperwork, where,

18   to whom it's supposed to be paid.  I presume it's supposed to

19   be paid to the Clerk of the District Court of the District of

20   Columbia.  But, Ms. Blackwell, you're going to need to inform

21   Mr. Haley, before we complete the judgment and commitment

22   order, who the money is supposed to be dispersed to.

23        Mr. Dresch, you have the right to appeal the sentence

24   imposed by this Court if the period of imprisonment is longer

25   than the statutory maximum or the sentence departs upward from

1     the applicable sentencing guideline range.  If you choose to

2     appeal, you must file any appeal within 14 days after the Court

3     enters judgment.  If you're unable to afford the cost of

4     appeal, you may request permission from the Court to file an

5     appeal without cost to you.

6           At this point I believe the government needs to make

7     a motion to dismiss Counts 1 through 4 of the indictment.

8           MS. BLACKWELL:  Yes, Your Honor.  The government

9     moves to dismiss Counts 1 through 4 of the indictment.

10          THE COURT:  All right.  So that will be granted.

11    We've already dealt with the sealed memoranda.  We're going to

12    issue a release order promptly.

13          Mr. Smith is there anything else I need to take up on

14    behalf of Mr. Dresch right now?

15          MR. SMITH:  No, Your Honor.  As I said, we'll pay the

16    $510 within two weeks.  I don't know if that needs to be

17    specified -- I mean, that's what we'll do.

18          THE COURT:  I can order that that be done.  He's not

19    under my supervision thereafter, but it is a part of the

20    sentence and you will owe the money no matter what.

21          MR. SMITH:  I understand.

22          THE COURT:  All right.  Ms. Blackwell, anything

23    further for the government?

24          MS. BLACKWELL:  Nothing from the government, Your

25    Honor.  Thank you.

1              THE COURT:  Okay.  Thank you very much, everyone.

2              MR. SMITH:  Thank you, Your Honor.

3                              *   *   *

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, JANICE DICKMAN, do hereby certify that the above and

foregoing constitutes a true and accurate transcript of my

stenographic notes and is a full, true and complete transcript

of the proceedings to the best of my ability.

                        Dated this 4th day of August, 2021




                        _____

                        Janice E. Dickman, CRR, CMR, CCR
                        Official Court Reporter
                        Room 6523
                        333 Constitution Avenue, N.W.
                        Washington, D.C.  20001